THE CLEVELAND WINDOW GLASS & DOOR Co. *v.*
NATIONAL SURETY Co.

(Decided June 27, 1927.)

*Messrs. Simmons, De Witt & Vilas* and *Messrs.
Day & Day,* for plaintiff in error.

*Messrs. Tolles, Hogsett & Ginn,* for defendant in
error.

SULLIVAN, P. J. This proceeding is one of a series
of cases pending in the state and United States
courts, where a similar question is involved, and
we are to determine whether the court below com-
mitted prejudicial error in sustaining a general de-
murrer to a petition of the Cleveland Window Glass
& Door Company, filed against the National Surety
Company, on the ground that the allegations thereof
were not sufficient in law to constitute a cause of

action. The judgment of the Common Pleas Court is based upon the construction it gave to the wording of a trust or mortgage deed from the Wade Chateau Company, which was arranging to construct an apartment house in the city of Cleveland by an issuance of bonds, under a trust deed, to the Guardian Savings & Trust Company, as trustee for the bondholders, to secure the payment of $100,000 par value of bonds, and to the construction it gave to the terms of the bond itself.

Clause 10 of this instrument of trust is essentially a basis for the determination of the question raised by demurrer. The able counsel for the Cleveland Window Glass & Door Company contend that the trust deed and bond of the National Surety Company constituted a liability for the liens created by the mechanics and the materialmen, and the plaintiff sues to recover by reason of the liability in the bond for the balance due it for the furnishing of material for the construction of the apartment, and for which the bonds were issued and the trust or mortgage deed executed to the Guardian Savings & Trust Company, trustee. The plaintiff claims that the provision in clause 10, specifying that the building shall be free of all liens, or liability for liens, and fully paid for, attaches liability in law to the National Surety Company for the payment of the balance of plaintiff's account for material furnished for the erection of the structure.

This claim is opposed by counsel for the National Surety Company as unwarranted in law, under that interpretation of the language of the instruments of writing in question, which the rules of construction compel, and it is urged unqualifiedly by counsel for

the National Surety Company that neither the terms of the mortgage deed nor the provisions of the bond, in any manner, by any rule of construction, either by express terms or by implication, establish any liability to the mechanics or materialmen on the part of the surety company, and it entrenches itself behind the proposition that the bond itself by its express terms runs only, and solely, and exclusively to and for the benefit of the Guardian Savings & Trust Company, trustee for the use of the bondholders alone.

This latter view the court below relied upon to sustain the demurrer to the petition of the Cleveland Window Glass & Door Company, and the plaintiff not desiring to plead further, judgment was entered for the defendant, the National Surety Company.

Section 10 of the trust or mortgage deed, above noted, is as follows:

"Section 10. * * * The company covenants that it will construct or cause to be constructed, on the premises hereinabove described, a new building in accordance with the plans and specifications therefor deposited with the trustee and initialed by the parties hereto for the purpose of identification, work upon which shall be commenced within thirty days from the' date hereof, and which shall be fully completed and ready for use and occupancy prior to the first day of July, 1920—which building when completed shall have a fair and reasonable cost of construction and value of not less than $165,000.00 (including carrying charges, during the periods of construction not exceeding $7,500.00) and which upon completion shall be free from all liens or lia-

bility for liens under any materialmen's, mechanics,' laborers,' or other similar lien laws, or the possibility thereof, resulting from said improvement and fully paid for. * * * The company further covenants that, before beginning any construction of said building and before any contracts are let, it will furnish to the trustee hereunder a surety bond, in the penal sum of at least $50,000.00, with sureties satisfactory to the trustee hereunder, conditioned that the company will erect such building in accordance with said plans and specifications and that the same shall be completed within the time and in the manner above stipulated, free from mechanics' liens as aforesaid, fully paid for and ready for use and occupancy.''

Counsel for the Cleveland Window Glass & Door Company stress the importance of this clause, in connection with certain clauses in the bond, as decisive of their claim, for the reason that it provides that the building shall be free from all liens and fully paid for, and insist that this latter clause is immaterial unless it applies to liens for material.

To bear out this interpretation of clause 10 of the mortgage or trust deed to the Guardian Savings & Trust Company, trustee, counsel for plaintiff cite certain clauses of the bond itself, to show the logical consistency between the deed and the bond, for it is argued that in these clauses the provisions require that the building shall be erected in the manner provided in the deed of trust, and, that, inasmuch as the deed requires that the structure shall be fully paid for and free from liens, the only logical conclusion from the language is that the surety company is

liable for material going into the construction and not paid for.

In connection with the quotation of clause 10 in the trust deed, we also quote, for comparison, the clauses of the bond to which reference is above made. They are:

"Whereas, the principal has this date executed and delivered to the Guardian Savings & Trust Company, as trustee, a first mortgage deed of trust upon said leasehold estate to secure payment of bonds aggregating the sum of one hundred thousand dollars ($100,000.00) face amount, and in said mortgage deed of trust has agreed to erect a new building upon leased premises prior to the first day of October, 1920, which when completed shall have a cost of construction and value as evidenced by vouchers paid for material and labor of not less than one hundred and fifty-five thousand dollars ($155,000.00) and not more than one hundred seventy-five thousand dollars ($175,000.00) including not to exceed seventy-five hundred dollars ($7,500.00) for carrying charges during the period of construction, free from all liens except the mortgage liens on said leasehold estate, and further has covenanted to furnish said trustee named in said mortgage deed of trust a surety bond in the sum of fifty thousand dollars ($50,000.00) securing the erection of said building in said mortgage deed of trust provided which building clause in said mortgage deed of trust is by reference incorporated with and made a part hereof; and * * *

"Whereas, the said building is to be erected also in accordance with plans and specifications and de-

tails prepared and approved by the principal and owner, and which shall be initialed by the said parties for identification and deposited with the Guardian Savings & Trust Company, as trustee:

"Now, if said principal shall erect or cause to be erected said building in the manner provided in said mortgage deed of trust and in said plans and specifications, and details, and shall complete the same by October 1, 1920, subject, however, to lockouts, strikes, acts of God, and other causes, over which said principal has no control, free and clear of any and all liens and incumbrances arising from the claims of architects, mechanics, materialmen, laborers, and others for labor done and material furnished in and about the construction of said building, and shall indemnify and save harmless said obligee and the holders of said bonds from all suits, demands, counsel fees, and damages of whatever nature which may be incurred or suffered by them on account of any architects', mechanics', laborers', or other claims or liens that may now or hereafter be entered against said building or premises on account of said building construction, or in event of default of said principal for any cause whatsoever, to erect and complete said building free from all liens and incumbrances according to said mortgage deed of trust and the aforesaid plans, specifications, and details therefor, the surety will save harmless the obligee and said bondholders from all costs, suits, demands, counsel fees, and damages of whatsoever nature which may be incurred or suffered by them on account of architects', mechanics', laborers', or other liens which are now or may hereafter be entered against said building, then this obligation

shall be void, otherwise to remain in full force and virtue in law, but in no event shall the surety's liability exceed the amount of the said bond, and should the principal fail to complete the said building by October 1, 1920, as hereinbefore stated, the said trustee or others shall not exceed daily costs of carrying charges for the length of such delay of completion."

Now let us look to the provisions of the bond itself, to see whether from that instrument the surety company became obligated, expressly or impliedly, to the window glass company, or other similar claimants, who look to that source for payment of their claims inasmuch as the Wade Chateau Company became insolvent.

To reach the law of the case, or, in other words, to answer the question herein raised, it is necessary to keep in mind certain elementary principles which have a governing and decisive force. What was the intention of the parties, deducible from the provisions of the bond, especially the obligations of the bond? No matter what the terms of the deed of trust are, the ground for recovery, the existence of legal liability, must be imbedded in the terms of the bond. There is such a vast difference between the claim that it runs to both the bondholders and the lienholders, and the claim that it runs to the bondholders alone, that it must be assumed that this striking fact, involving not only the question of financial responsibility, but of premium payments as well, was just as patent, important, and obvious prior to the execution of the instrument, and during its drafting, as at the present time, and, if so, is it unreasonable to assume that if the former was their

intent the parties to the bond would not have drawn upon a wealth of language to incorporate in the bond those words, phrases and clauses which would specifically include lienholders as well as bondholders, or which, by their employment, would specifically provide that the contract or obligation was for the benefit of third parties not actual parties to the contract? The provisions of the bond indicate a skill and knowledge of language, and a care and caution in its use, as well as liberality of expression where the same may be necessary and useful to the party exercising the prerogative. If the bond was to run to lienholders as well as bondholders, it is only simple logic to say that language of such import would have been employed. But there is no word of this nature expressly stated in the bond, and this absence can only mean that it was not the intention of the parties to have the bond run to both the bondholders and the lienholders. The bond distinctly runs to the bondholders, and to insert lienholders as well, without express or implied authority, is the executing of a new and additional obligation on the part of the surety company, not warranted by any construction of which the language is capable. If the contrary were the intention, the conclusion is inevitable that the insurance company would have inserted a clause including lienholders, and would thus have secured an additional premium, and the principal of the bond would have insisted upon the employment of such a clause as a matter of self-preservation. This situation applies to the Guardian Savings & Trust Company, as well as to the Wade Chateau Company. Language is not ambiguous that needs no explanation. The terms of

the bond run to the bondholders alone, because the bond ends with that mission, and it employs no language whatever, directly or indirectly, that includes anything or anybody but the bondholders; when the obligation ends with bondholders, then the clause is left without doubt, shorn of uncertainty, and there is, therefore, no ambiguity, and no need of resort to the rules of construction. The doubt must arise from the language, not from the invention of the mind. The uncertainty must sound from within the language, not from without. The innuendo in a libel case must be born in the words of the libel. It cannot be injected as a foreign substance, alien to the words themselves. The same with an ambiguity. It must be native and not alien to the language.

In the case of *Tillotson & Wolcott Co. v. Scottdale Machine & Manufacturing Co.,* 23 Ohio App., 399, 155 N. E., 409, we quote the four paragraphs of the syllabus and a paragraph from the opinion, at page 400 (155 N. E., 409), for the purpose of emphasizing the importance of analyzing the language under controversy in the case at bar rather than depending upon authorities which apply to cases which are at best only similar to the instant case:

"(1) Language of written instrument cannot escape its natural and logical meaning, if unambiguous.

"(2) If language of a written contract is ambiguous, facts and elements surrounding it must be employed to ascertain true meaning.

"(3) Ambiguity in written instrument to permit extraneous facts in interpretation should arise from language, and not be element foreign to context and

forced therein to strain meaning apparent by language used.

"(4) Written instrument, guaranteeing payment by buyer of amounts due under contract, in which guarantors limited themselves specifically to payment of drafts for work completed, *held* not to extend beyond financing of payments for completed materials, and did not include damages for buyer's breach of contract."

"If the writing is unambiguous, then it speaks for itself, for it is an axiom that the court must adhere to the language if the context is clear and unmistakable, and must only resort to extrinsic aid when the language falls short of explaining itself. It is an error of construction to wedge an ambiguity into a written instrument, where in and of itself such situation does not naturally and logically arise, but only appears by injecting an interpretation which the language itself does not warrant. Ambiguity should arise from the language, and not be an element foreign to the context, forced therein for the purpose of straining a meaning which is apparent by the words, phrases, and clauses therein employed."

There can be no implication where the language itself is capable of but one construction, as in the instant case, where the bond runs to the bondholders and to no one else, because it does not so stipulate; if the intention were to include lienholders, all that was necessary was to write that one word in the bond. But it is not there, and the court has no power to put it there and thus create a hazard not "nominated in the bond," and for which no premium was paid.

A studious perusal of the conditions of the bond heretofore quoted compels approval of the views herein expressed as sound and irresistibly flowing from the specific provisions. The conditions are:

First. That the Wade Chateau Company shall erect free and clear of all liens of every nature that could be specified.

Second. That they shall save harmless the obligee and bondholders from all dangers probable, or possible, and named in the bond.

Third. That then the obligation shall be void; otherwise, in full force.

It is our unanimous judgment that this language in the bond can in no manner be so construed as to attach any obligation flowing from the surety company to the plaintiff in error or others similarly placed. The very condition of the bond limits the liability of the surety to the bondholders, and creates by its own provisions a "dead line" between its liability under the bond to the bondholders and its liability to any other entity.

Learned counsel for plaintiff in error contend that clause 10 in the trust or mortgage deed is so vitally connected with the clauses of the bond itself that impliedly, at least, the obligation is one entered into for the benefit of third parties not signatory to the document itself. Such contracts are valid, but we find no provision in the documents that leads to such a fact or hypothesis.

That the bond provides that the building shall be erected in the manner provided for in the deed of trust creates in our judgment no implication that the bond protects the lienholders. The observation is true also as to the phrase "fully paid for," found

in the deed of trust. We see no legal relationship between the two, with respect to the liability clauses of the bond. The value and validity of mortgage bonds may depend upon the existence or nonexistence of liens, for litigation often arises between the bondholders and the lienholders as to priority and validity, as, for instance, whether the lienholders or bondholders acquire their liens first, as in the case of *North Shaker Boulevard Co.* v. *Harriman National Bank of City of New York, Trustee,* 22 Ohio App., 487, 153 N. E., 909, decided by this court November 17, 1924. We see no legal affinity between the phrase "fully paid for" and the phrase "manner" of construction, for each has a separate and distinct meaning and relates to subject-matters entirely opposite and inconsistent in character and significance. At least this is the way we view this situation growing out of clauses in the bond and deed of trust, and treated as decisive by counsel for plaintiff in error, who learnedly argue that the relationship is favorable to their client's cause.

It will be observed that thus far we have attempted to pay more attention to the language of the bond and deed than to the authorities cited, but we have done this because no two cases are exactly alike, and oftentimes the language itself is the best guide, for it is self-evident that specific vital obligations are either in or out of a contract by the acts of the parties themselves, whose intentions are gauged by the language of their own lips, or the words indited by their own pens.

With these thoughts in mind, we have great respect for the language of Judge Spear in *Livingston and Taft, Trustees,* v. *Fidelity & Deposit Co.,* 76

Ohio St., 253, 264, 81 N. E., 330, 332, which is as follows:

"It is perhaps not necessary to look beyond our own state to ascertain the correct rule. Being contracts of indemnity against loss, such contracts should be liberally construed in favor of the object sought to be attained, and where a clause is susceptible of two interpretations which seem equally fair, that should be preferred which affords the greater indemnity, but, like other contracts, they should receive a reasonable construction in order to carry out the presumed intention of the parties as expressed by the language used. *West et al.* v. *Insurance Co.*, 27 Ohio St., 1 [22 Am. Rep., 294]; *Travelers' Ins. Co.* v. *Myers & Co.*, 62 Ohio St., 529 [57 N. E., 458, 49 L. R. A., 760]; *Germania Fire Ins. Co.* v. *Schild,* 69 Ohio St., 136 [68 N. E., 706, 100 Am. St. Rep., 663]."

The case of *Royal Indemnity Co.* v. *Northern Ohio Granite & Stone Co.,* 100 Ohio St., 373, 126 N. E., 405, 12 A. L. R., 378, we hold not applicable to the present issue, as we view it, for the reason that in that case, by the express terms of the bond, the granite company stood behind the contractor, including the labor and material claims. In the instant case there is a total absence of any such obligation to the materialmen, express or implied.

In the case of *National Surety Co.* v. *Brown-Graves Co.,* 7 F. (2d), 91, the provisions of the selfsame bond now under discussion here were before the United States Circuit Court of Appeals for the Sixth Circuit, upon error proceedings from the United States District Court for the Northern District of Ohio, and in construing this identical bond

that court reversed the lower court, and said that it was not conceivable to them that it was intended to protect any one except the bondholders. We insert the following quotation from the opinion of United States Judge Moorman because of the high authority of the United States Court of the Sixth Circuit, which includes Ohio:

"The Brown-Graves Company was not a party to this bond or to the consideration inducing its execution. The covenant was to erect the building 'free from all liens, except the mortgage liens on said leasehold estate,' and a condition was that the building should be erected 'in the manner provided in said mortgage deed of trust and in said plans and specifications, * * * free and clear of any and all liens and incumbrances arising from the claims of architects, mechanics, materialmen, laborers, and others for labor done and material furnished in and about the construction of said building,' etc. These conditions were imposed to protect the bondholders, who had a selfish interest in the completion of the building according to the plans and specifications, free of liens. Liens were asserted against the building, but they have all been discharged. The bondholders are not complaining. But, if they were, plaintiff could not maintain this action, unless it could be said that the bond was executed for its benefit as well as the bondholders. As said in *Simson* v. *Brown*, 68 N. Y., 355, and approved in *Constable* v. *National Steamship Co.*, 154 U. S., 51, 14 S. Ct., 1062, 38 L. Ed., 903: 'It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person, he being neither

privy to the contract, nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited.' The test is whether it was the purpose of the bond to include in its protection collateral interests. It is not conceivable to us that it was. Plaintiff's reliance on the bond at the time the material was furnished does not enlarge its obligations or the purposes for which it was executed. Nor did an incidental interest in the full performance of the building contract change the situation, for those who had the right to look to the bond for indemnity are to be found in its terms and intendment, which we think clearly exclude plaintiff as a beneficiary.''

Our reference to *Indemnity Company* v. *Granite Company, supra,* to the effect that it is distinguishable from the case at bar, as above noted, makes very applicable, we think, the opinion of the *Brown-Graves case, supra,* even though we refer to an Ohio contract. Even the opinion of the United States District Court, by Jones, J., specifically states that the conclusion reached by that court is not based upon any express provision "nominated in the bond,'' so that the foundation for the construction is based upon an implication merely, and under the rule laid down by Judge Spear of our Supreme Court, above noted, we do not see that such a construction is warrantable.

Holding these views, we are unanimously of the opinion that the ruling of the common pleas court, in sustaining the demurrer to the petition, was justified in law, and the judgment of that court, therefore, is affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.