**S. L. REED and Western Casualty & Surety Company, Appellants,**

v.

**MARYLAND CASUALTY COMPANY et al., Appellees.**

No. 16099.

United States Court of Appeals
Fifth Circuit.

April 22, 1957.

Rehearing Denied June 10, 1957.

858

Vardaman S. Dunn, Jackson, Miss., for appellant.

Elizabeth Hulen (Watkins) Grayson, Thos. H. Watkins, P. H. Eager, Jr., Jackson, Miss., Bruce C. Aultman, Hattiesburg, Miss., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

PER CURIAM.

On March 17, 1952, Reed-Meredith, Inc., with Maryland Casualty Company as surety, contracted in writing with S. L. Reed[1] to perform "certain items of work" embraced in a contract between him (Western Casualty and Surety Company as surety) and the Mississippi Highway Department for the building of a stretch of road in Coahoma County, Mississippi. Certain materials had previously been furnished to Reed and had later been turned over by him to, and used by, Reed-Meredith, and certain services had been performed in connection with the subject matter of the subcontract, prior to the execution of the surety bond; some of the materials so furnished were only used after May 17th. The question presented is whether Maryland, appellee, is liable under its bond (Reed-Meredith being insolvent) for such services and materials. The court below, sitting by agreement without a jury, answered that question in the negative and entered a final judgment on the merits in favor of Maryland and against Reed and Western.[2]

The litigation was begun by complaint for declaratory judgment brought by Maryland against Reed and Western[3] which, with amended complaint, prayed for judgment declaring that its bond did not cover liabilities to said claimants incurred or accruing prior to its execution

1. The parties to the contract are not related.

2. The proceedings began as a hearing of motion for summary judgment filed by each of the parties. But, at the beginning of the argument, the parties stipulated in writing that the case would be submitted for final judgment upon the evidence which had been placed before the court upon the motions for summary judgment.

3. Additional defendants were Reed-Meredith, Inc., W. R. Fairchild Construction Company, Ltd., certain individuals doing business as Lynn Sand and Gravel Company, and certain individuals doing business as Highway Materials Company. All of these defendants except Reed-Meredith had furnished materials or services or both going into the execution of the contract between Reed and Reed-Meredith, mainly prior to the execution of the written contract. Judgments in favor of these furnishers were rendered on their cross-claims against Reed and Western; and judgment was rendered in favor of Reed and Western against Reed-Meredith. No appeal was taken from those portions of the judgment.

and for other, related relief. The responsive pleadings of Reed and Western consisted of a general denial of the legal and factual averments of the complaint. Appellants and appellees agree that their rights are to be determined by the writings executed on March 17, 1952, consisting of the contract between appellant, S. L. Reed, and Reed-Meredith, Inc., the latter's application for bond, and the bond executed by appellee, Maryland. But all arguments proceed in recognition of the fact that a wide exploration of the facts is necessary to determine the nature of the respective claims and the situation and relationships of the various parties in connection with them. These facts may well be set out by abridging the findings of fact of the court below.[4]

The contract (prepared by Reed) of March 17, 1952, between S. L. Reed, contractor, and Reed-Meredith, subcontractor, referred to and incorporated within its terms the contract between Reed and the Highway Department insofar as it laid upon the subcontractor the duty of performing the six items here involved in conformity with the terms of said main contract. Pertinent provisions of the subcontract of March 17th appear in the margin.[5] On the same date a representative of Reed-Meredith, in company

4. On March 8, 1951, Reed with Western as surety contracted with the State Highway Department for the construction of a segment of highway in Coahoma County, Mississippi. In the summer of 1951, Reed subcontracted the work here involved to L & P Construction Company of Memphis, but that company abandoned performance of the contract about November, 1951. Before doing so, however, it made a contract (first disputed item here involved) with W. R. Fairchild Construction Company for the driving of piling for the bridge at a price of $4.25 per lineal foot.

On September 22, 1951, Reed purchased and accepted delivery from Highway Materials Company (second contested item) reinforcing steel necessary for precasting the pilings, the aggregate cost to be $3,617.85.

In December, 1951, Reed entered into an oral subcontract with Reed-Meredith, Inc., for the performance of the items afterwards covered by the written contract here involved for a total cost of $42,987.09. Reed-Meredith took over the reinforcing steel acquired from Highway Materials and the contract with Fairchild for driving the piling and agreed to assume Reed's obligations arising from those arrangements.

About January 1, 1952, Reed-Meredith moved onto the job and began performance of the oral contract by purchasing lumber for forms, using the steel and precasting the concrete pilings. Prior to March 10, 1952, Lynn Sand and Gravel Company delivered to the Reed-Meredith job sand and gravel of the value of $1,073.06 which said company invoiced to S. L. Reed (third contested item).

On March 11th Fairchild moved its pile driver from Hattiesburg, about 200 miles away, and set it up at the bridge location, pursuant to its contract made the previous month with Reed and later assumed by Reed-Meredith. Some of the precast pilings had to be moved, and this work was performed along with the driving of some test pilings. Before the making of the written contract here involved, from 11 to 14 of a probable 36 piles had been driven. The residue of the piles were driven between March 17th and March 25th, and the only specific outlay by Fairchild in said operation was a payroll of approximately $1,000.00. The only contract had between Fairchild and Reed-Meredith was that made in December, and it was fully performed as above set forth; and Reed-Meredith became indebted to said Fairchild in the sum of $9,707.00.

On March 14, 1952, it appearing probable that the piling could not be precast and driven for the amount provided in the contract ($8.00 per foot), Reed applied in writing to the Mississippi Highway Department for an advance payment then not yet due of 60% of the total price of precasting the piling, which advance was made on March 27th upon the condition that Reed and Western sign a written agreement containing the provision that the labor and material going into the piling would be paid out of said advance. Maryland was not advised of this prepayment. Reed turned this advance over to Reed-Meredith apparently without seeing that any part of the cost of materials were paid to Fairchild or Highway Materials Company.

5. "1. Performance. Subcontractor agrees to and will do and perform with his own forces and under his direction all of the work required, furnish all necessary

with appellant, Reed, went to Maryland's agent and executed an application for a bond which contained the question, "When must work begin?" To which the answer was made with pen: "Immediately." Thereupon Maryland issued to S. L. Reed its "Performance Bond" incorporating by reference the terms of the written subcontract between Reed and Reed-Meredith. The bond was conditioned that it would be null and void "if contractor shall promptly and faithfully perform *said contract*." [6] (Emphasis added.)

materials and pay all labor necessary for completion of the work specified, and Subcontractor further agrees and obligates and obligates and binds itself to perform said work and furnish said materials, labor and equipment in strict compliance with and in accordance with the specifications, schedules, drawings and contract terms of original contract.

"2. Work. Subcontractor will assume complete performance of the following items set forth in original contract and none other and will complete same in strict accordance with plans, drawings, specifications, and schedules of original contract in the following approximate quantities:

Roadway and Bridge

| Pay Item | Item | Quantity | Unit |
|---|---|---|---|
| 211 | Reinforcing Steel | 30000.0 | Lbs. |
| 200 B | Class B Bridge Concrete | 208.8 | C.Y. |
| 201 A | Structural Steel | 83160.0 | Lbs. |
| 228 | Railing | 305.5 | Ln.Ft. |
| 240 B | Loading Test | 1.0 | Units |
| 240 E | Precast Concrete Piling (16″) | 1980.0 | Ln.Ft. |
| | Unit Price | Amount | |
| (211) | .12 | 3600.00 | |
| (200 B) | 51.00 | 10648.80 | |
| (201 A) | .135 | 11226.60 | |
| (228) | 5.00 | 1522.50 | |
| (240 B) | 150.00 | 150.00 | |
| (240 E) | 8.00 | 15840.00 | |
| | Total | 42987.90 | |

It is specifically understood and agreed that all quantities set out above under each item are approximate and that the unit prices set forth under each item are the consideration for this contract and for all work performed, labor, material, equipment furnished by said Subcontractor and that said unit price applies to that actually done and shall determine that due hereunder * * *.

"Bond. *Prior to* commencing operations under this subcontract, Subcontractor agrees to furnish Contractor with performance bond in an amount equal to 100% of the total amount of the Subcontract as hereinbefore set forth * * *." (Emphasis added.)

6. Relevant portions of the bond follow: "That Reed-Meredith, Inc. of Jackson, Mississippi, as principal, hereinafter called contractor, and Maryland Casualty Company * * * as surety * * * are held and firmly bound unto S. L. Reed of Belzoni, Mississippi, as Obligee, hereinafter called Owner in the amount of Forty-two Thousand Nine Hundred Eighty-Seven Dollars Ninety Cents. * * *

"Whereas, Contractor has by written agreement * * * entered into a contract with Owner for subcontracting certain parts of contract between Mississippi State Highway Department and S. L. Reed * * * which contract is by reference made a part hereof * * *.

"Now, therefore, the condition of this obligation is such that, if Contractor shall promptly and faithfully perform said contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect * * *.

"No right of action shall accrue on this bond to or for the use of any person or corporation other than the owner named herein * * *."

Section 374, Mississippi Code of 1942, becomes by law a part of every such bond and provides:

" * * * such bond shall also be subject to the additional obligation that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract * * *."

The trial court found that Reed-Meredith had completed the contract and had been paid by S. L. Reed the sum of $41,041.32, being 90% of the full consideration, $7,813.76 of which was paid directly by Reed to Virginia Bridge Company, and that S. L. Reed retained 10% of the total contract price, amounting to $4,424.58. It held that Reed-Meredith was insolvent and had left unpaid the items involved in this litigation.[7] It held also that neither Highway Materials nor Fairchild nor Lynn had any direct claim against Maryland but that they did have valid claims against appellant. This suit, therefore, resolves itself into a contest between appellant, Reed, obligee in the bond, and Maryland, the surety, as to whether Reed can recover from Maryland the amount of the contested items and the rental charge of Reed against Reed-Meredith.

The court construed the contract, the application, and the bond of March 17th to be entirely prospective in their terms and to apply only to work done and obligations incurred after the execution of the writings.

It held that Maryland had no notice or knowledge that any of the materials had been purchased or any obligation incurred or any work performed prior to the execution of its bond, but that it had relied entirely upon the language of the three written instruments as defining its obligation and limiting its liability to what should happen subsequent to its execution.

Appellants claim that the trial court committed error in its findings of fact and its conclusions of law in several particulars.[8]

We are unable to agree with the district court in its holding that appellee's obligation on the bond should be limited so as to exclude all materials acquired and all work performed by subcontractors after its execution if done in pursuance to subcontracts entered into before then. The written contract refers to Reed-Meredith's obligation to complete all of the work required in the performance of certain specified items of work, and to "furnish all necessary materials and pay all labor necessary for completion of the work specified," and the amount of the bond (and thus the compensation of the surety) is for the entire contract amount. By Mississippi law such construction contracts are indivisible, Clark v. Till, 177 Miss. 891, 172

---

7. Highway Materials Co. $3,617.85, Lynn Sand and Gravel Co. $1,073.06, Fairchild Construction Co. $9,707.00 and S. L. Reed rental of equipment $511.92, together with interest and attorneys' fees.

8. 1. In concluding that the sand and gravel had been purchased by S. L. Reed, and finding that Fairchild's earnings for driving pile after March 17th were limited to the payroll of approximately $1,000.00, that Reed-Meredith performed practically all of the work under the oral contract not covered by the bond, that appellee was ignorant of the fact that the work had been done and relied on the terms of the written contract that it was all to be done in the future, and that Reed-Meredith was insolvent.

2. In concluding as a matter of law that appellants carried the burden (implicit in its holding) of showing that appellee had notice when it executed the bond that the work was in progress under the oral contract, that the written contract should be construed as prospective and to exclude liability for prior work.

3. In failing to give controlling weight to the evidence alleged to be undisputed that work had begun prior to the written contract, that appellee was not prejudiced by the preliminary work, that appellants made no representations to appellee concerning the status of the work, that Appellant Reed made no payment to Reed-Meredith until April 15, 1952, without objection on the part of appellee, and that over two-thirds of the work was actually "incorporated" into the bridge after the bond date.

They argued at length that the bonded subcontract was indivisible requiring a complete construction of a bridge, that appellee had notice that the work had been partially completed or in the alternative was not misled or prejudiced thereby, that appellee ratified its obligation to appellants by its silence and that in any event appellants are entitled to recover for two-thirds of the work which appellee insists had been performed after March 17th.

So. 133. The crucial question, therefore, is whether section 374 of the Mississippi Code of 1942 must be interpreted to limit the surety's obligation under the above-quoted contractual provision which is also embodied in the bond, to the payment of labor and materials furnished *after* said contract was entered into, or whether the broader contractual obligation must be interpreted to include all labor and materials furnished *to accomplish the purpose of the indivisible contract.*

■ The district court relies on the well established rule that in the absence of special provisions a surety contract will be interpreted to be only prospective in effect. But the very quotation used by the court shows the inapplicability of that doctrine as generally stated to the present situation:

> "A contract of suretyship is not retrospective in its operation and no liability attaches to the surety for *defaults* occurring before it is entered into, unless an intent to be so liable is indicated." (Emphasis added.) 72 C.J.S., Principal and Surety, § 108.

Similarly from 50 Am.Jur., Suretyship, § 34:

> "Contract of suretyship affecting ordinary business transactions take effect from the date of their execution, and applying the rule that a surety cannot be held beyond the terms or legal effect of his engagement, the surety's liability will generally be restricted to *defaults* of the principal occurring during the period of the suretyship undertaking." (Emphasis added.)

This is merely a natural consequence of the fact that for practical purposes these suretyship contracts are much like contracts of insurance, whereby the insurer will assume the risk only of future occurrences but not of past and established ones. Here, however, there was no *default* which anteceded the execution of the bond, nor did the previous acquisition of materials and contracts for sub-projects make such a default more probable.

■ Appellee relies on the fact that the Reed—Reed-Meredith contract incorporated in the bond requires Reed-Meredith to furnish the bond "prior to commencing operations under this subcontract," but this is merely in the form of an obligation on the subcontractor and is not a representation that the bond had actually been obtained as required—if indeed that were construed as a limitation or warranty on the bond, the argument would prove too much, for having been obtained subsequent to the start of the work the bond might then be considered void in its entirety. The same may be said for the purported reliance by the surety on Reed-Meredith's answer to the question: "When must work begin?"—"Immediately;" since it is not argued that this "misrepresentation" vitiates the entire bond, it cannot be read, since it does not state or even imply, that no obligations in connection with the work had yet been assumed.

■■ It is clear that the purpose of the bond, in view also of the quoted statutory provision, is to assure the obligee that he will obtain the entire project contracted for as and when specified by the terms of the contract, and that all labor and material obligations incurred by the contractor in connection with the project shall have been paid by either the contractor or by his surety so as not to constitute liens against the project, i. e. to avoid the possibility of the kind of claim being asserted here. In the absence of any showing of prejudice to the surety, it seems completely irrelevant to the purpose of the bond that the contractor had already used labor to perform part of the work, had obtained some materials, or had entered into now partially executed subcontracts before the bond was executed and delivered. Naturally if there had been any proof that the surety was actually prejudiced by the advanced state of execution of the contract it was guaranteeing it would have a defense to the full extent that it was injured, but in the absence of such a

showing there can be no such off-set. This is the implication of Metropolitan Casualty Ins. Co. of N. Y. v. Koelling, Miss., 57 So.2d 562, in which it was held that where improper payments were made and work was apparently started before the execution of the bond, the surety would have a defense only to the extent of such improper payments. The case of United States Fidelity & Guaranty Co. v. Maryland Casualty Co., 191 Miss. 103, 199 So. 278, 281, on which the district court and appellees rely, is inapplicable, for there it was expressly determined that since the principal, by his contract with the obligee, did not assume liability for any obligations incurred for work done before the principal contracted to complete the construction, his surety could not have assumed such liability either; also, the contract incorporated into that bond referred only to "payment to all persons supplying the principal." In the present case, the principal, Reed-Meredith, expressly agreed to furnish all necessary materials and pay all labor necessary for "completion of the work specified," and the statutory provision read into the bond does not restrict the surety's obligation to payments made to persons supplying the principal, but, co-extensive with the terms of the contract, refers to "payments to all persons furnishing labor or material under said contract * * *."

We therefore hold that appellee is liable on its bond for all labor and materials furnished by third parties to Reed-Meredith either directly or under agreements originally made with S. L. Reed, and whether the materials and labor were furnished before or after the execution of the bond.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

On Petition for Rehearing.

PER CURIAM.

It is ordered that the petition for rehearing filed by the appellee and the motion of appellants for decision upon issue of legal expenses be and the same are hereby denied.

CAMERON, Circuit Judge (dissenting).

I would grant the petition for rehearing, set aside this Court's order of reversal entered April 22, 1957, and enter an order affirming the judgment of the District Court. The per curiam opinion rendered by this Court on the above date is, in my opinion, inconsonant with the facts so intelligently and accurately settled in the findings of the Court below and the Mississippi law as applied by it, Alabama Marble Co. v. United States Fidelity & Guaranty Co., 1927, 146 Miss. 414, 111 So. 573; Gammill Co. v. Guesnard, 1933, 167 Miss. 868, 150 So. 214; and United States Fidelity & Guaranty Co. v. Maryland Casualty Co., 1940, 191 Miss. 103, 199 So. 278. Therefore, I dissent.