PETERSON, Appellant, v. SCHRIEBER and another,
Respondents.

*No. 172 (1974). Submitted on briefs February 4, 1976.—
Decided March 2, 1976.*
(Also reported in 238 N. W. 2d 722.)

For the appellant the cause was submitted on the briefs of *Russell & Olson* of Merrill.

For the respondent Fidelity & Deposit Company of Maryland the cause was submitted on the brief of *Douglas J. Klingberg* and *Terwilliger, Wakeen, Piehler, Conway & Rouse, S. C.*, all of Wausau.

WILKIE, C. J.   The issue on this appeal is whether a surety, the defendant-respondent Fidelity & Deposit Company of Maryland, is liable on a performance bond for a contract payment made (June 28, 1971) by the obligee, the plaintiff-appellant Glenn Peterson, prior to the execution of the bond (October 25, 1971) when, also prior to the execution of the bond, the principal contractor, Larry Schrieber, another defendant, had defaulted on the first work to be done under that contract. We conclude that it is not, and therefore affirm the trial court, excusing Fidelity from liability for the $10,000 which was paid by Peterson to Schrieber in advance of the execution of the performance bond.   Judgment was entered in the trial court for the plaintiff Peterson against Schrieber alone for $10,250 and against Schrieber and Fidelity in the amount of $13,382.36.

Peterson was in the trucking business and needed a building for garaging and repairing his trucks and buses. In June of 1971 he and Schrieber, a local builder, entered into a contract, partly written and partly oral, for the construction of a prefabricated steel building on Peterson's property.   The parties agreed that Schrieber would supervise the preparation of the building site, lay a

concrete slab, and erect a specified building for a consideration in excess of $36,000. The payment provisions were 25 percent at the time of agreement, 50 percent upon delivery of the building to the site, and 25 percent upon completion of construction. Peterson paid Schrieber $10,000 on June 28th by a check postdated to July 1st.

The preparation of the site involved hauling in fill, and then leveling and compacting it. Schrieber was to supervise this preparation by setting up various grade stakes and using a transit to determine the correct level. Peterson hauled in what he thought was 90 percent of the necessary fill during the first two weeks in July. However, despite numerous calls by Peterson, Schrieber was unavailable to do the necessary supervision. Schrieber was generally unavailable throughout the months of July, August, and September, although he did appear at the site a few times.

As for the laying of the concrete slab for the building, Schrieber put it off and eventually, sometime before October 18th, got in touch with Elmer Rigney, a mason, who agreed to lay the slab for $7,352.10. On December 9th Peterson, who had guaranteed the payment to Rigney, actually partially fulfilled his guarantee by paying Rigney $3,800.

Schrieber did. not obtain a performance bond until October and, in fact, on October 25th a performance bond was finally executed with Schrieber as principal, Fidelity as surety, and Peterson as obligee. Schrieber had difficulties in November and December when his attempts to buy prefabricated steel building from the Whirlwind Manufacturing Company in Houston, Texas, failed because Schrieber did not have sufficient funds to cover his checks issued to Whirlwind. When Peterson discovered that Schrieber would not be able to secure delivery of his building, his counsel terminated the contract by letter of December 8th, and Peterson subsequently made other arrangements for a building.

As a result of all of this, Peterson commenced an action against Schrieber and Fidelity. After a trial to the court, the trial court issued a memorandum opinion in which he found that Schrieber breached the contract by not supervising the preparation of the site and not being available for help and advice, by failing to take care of the concrete slab and forcing Peterson to do so, and by not procuring delivery of the building due to his financial condition. The trial court entered a judgment for Peterson against both Schrieber and Fidelity for $13,382.36 ($7,645.44 which covered Peterson's total liability to Rigney for the laying of the concrete slab, the remainder reflecting the damage suffered by Peterson for going out and securing a replacement building for the one he had contracted for with Schrieber). The trial court also entered a judgment for Peterson and against Schrieber alone for the $10,000 payment made by Peterson to Schrieber on June 28th, almost four months before the execution of the performance bond.

The general rule, of course, is that a contract of suretyship is not retrospective in its application and that no liability attaches to the surety for defaults occurring prior to the date of execution of the performance bond.[1] Here there is no question but what Schrieber had defaulted on his contract by failing to supervise the preparation of the site, by not being available for help and advice, and by failing to take care of the concrete slab and forcing Peterson to do so. All of these defaults were prior to the execution of the performance bond.

The 25 percent payment made on June 28th was the only scheduled contracted payment to be made prior to the arrival of the building. Fidelity is not liable for this payment because it was a prebond payment related to

[1] 72 C. J. S., *Principal and Surety*, p. 588, sec. 108; 74 Am. Jur. 2d, *Suretyship*, p. 31, sec. 29; A. A. Stearns, *The Law of Suretyship* (5th ed., 1951), pp. 258, 258, sec. 8.10. *See also: Wussow v. Hase* (1900), 108 Wis. 382, 84 N. W. 433.

prebond work, which the principal contractor had already defaulted on, or (in the case of the concrete slab) nearly defaulted on at the time the bond was executed on October 25th. The fact that Fidelity was aware of Peterson's 25 percent payment at the time it executed the bond does not alter this result. The prior events prejudicial to Fidelity are Schrieber's defaults and near-defaults, not Peterson's first payment on June 28th, which was provided for in the contract between the parties. There is no evidence in the record that Fidelity had any knowledge of Schrieber's defaults or near-defaults at the time it issued the bond. Even if it was proven that Fidelity did have such knowledge, this alone might not be sufficient. A surety must indicate an intent to be liable for preexisting defaults,[2] and a knowledge of prior defaults may not in all cases imply an intent to assume liability for those defaults.

*Reed v. Maryland Casualty Co.,*[3] relied upon by the appellant, is not apposite to the facts of this case. In that case the federal court held only that, even though some of the transactions with which a construction contract was concerned were consummated prior to the execution of a bond, no default had occurred prior to the execution of the bond, and therefore the defaults were prospective and within the bond coverage. The court specifically noted as follows:

". . . for practical purposes these suretyship contracts are much like contracts of insurance, whereby the insurer will assume the risk only of future occurrences but not of past and established ones. Here, however, there was no *default* which anteceded the execution of the bond, nor did the previous acquisition of materials and contracts for subprojects make such a default more probable."[4]

---

[2] 72 C. J. S., *Principal and Surety*, p. 588, sec. 108.
[3] (5th Cir. 1957), 244 Fed. 2d 857.
[4] *Id.* at page 862.

The court also noted:

"... Naturally if there had been any proof that the surety was actually prejudiced by the advanced state of execution of the contract it was guaranteeing it would have a defense to the full extent that it was injured, but in the absence of such a showing there can be no such off-set."[5]

In the case at bar both actual defaults and events which made other defaults more probable preceded the execution of the bond. Fidelity was actually prejudiced by these defaults and near-defaults, and has an offset measured by the first contractual payment, made prior to the execution of the bond.

In net terms Peterson has only about $2,500 in unassured losses. In terms of building cost he came out even, because he was awarded damages, with appropriate adjustments, for the difference in cost between the Whirlwind building which Schrieber had agreed to provide and the replacement building that was later built on the property. In terms of nonbuilding costs, Peterson has a $10,000 loss represented by his June 28th payment to Schrieber. He also has a total liability to Rigney of $7,645.44. He has gained a concrete slab valued at about $7,500, and a judgment against Fidelity which includes the $7,645.44 owed to Rigney. Thus his total unassured loss amounts only to about $2,500, not $10,000.

Fidelity attacks the judgment against it along with Schrieber for $13,382.36. It contends that this judgment erroneously includes the $7,645.44 for Rigney's work and that the default of Schrieber in regard to the concrete slab actually occurred on October 18th, when, contrary to his agreement with Schrieber, Peterson was forced to guarantee Rigney's payment in order to get the slab. The trial court concluded that the default on the concrete slab actually did not occur until November 6th, when

[5] *Id.* at pages 862, 863.

the mason work was finished by Rigney, and thus the default is covered by the terms of the performance bond executed in late October. This conclusion of the trial court is reasonable and furthermore, Fidelity is precluded from seeking this change in the judgment on this appeal since it failed to serve on the appellant a notice of review specifying in what respect it desired a modification of the judgment.[6]

*By the Court.*—Judgment affirmed.

---

[6] Sec. 274.12 (1), Stats. *See also: State v. George* (1975), 69 Wis. 2d 92, 101, 230 N. W. 2d 253; *Hutterli v. State Conservation Comm.* (1967), 34 Wis. 2d 252, 255, 256, 148 N. W. 2d 849; *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 145, 140 N. W. 2d 267; *Tom Welch Accounting Service v. Walby* (1965), 29 Wis. 2d 123, 131, 138 N. W. 2d 139.