IOWA CONCRETE BREAKING
CORP., Respondent,

v.

JEWAT TRUCKING, INC., Defendant,

and

Central National Insurance Company of
Omaha, Appellant,

and

Road Constructors, Inc., et al.,
Respondents.

No. C5-88-2585.

Court of Appeals of Minnesota.

Sept. 5, 1989.

Review Denied Nov. 9, 1989.

Gary E. Leonard, Alderson, Ondov, Leonard & Sween, Austin, for Iowa Concrete Breaking Corp.

Norman E. Evidon, Scott J. Strouts, Minneapolis, for Central Nat. Ins. Co. of Omaha.

Kenneth R. Moen, Dunlap, Finseth, Berndt & Sandberg, Rochester, for Road Constructors, Inc., et al.

Heard, considered and decided by SCHUMACHER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

Appellant as a surety for a subcontractor was found primarily liable for the subcontractor's failure to pay a creditor. After a partial stipulation and a trial bifurcating the issues of liability and attorney fees, the trial court found joint and several liability on the part of general contractor, its surety, and appellant. Appellant now challenges its liability and the trial court's allowance of a cross-claim against it by the general contractor and its surety. We affirm.

## FACTS

After bidding on a state highway project, Road Constructors, Inc. (RCI) subcontracted with Jewat Trucking, Inc. (Jewat) to crush pavement for the project's two stages. The subcontract required that Jewat obtain a performance bond and a labor and material bond. Subsequently, RCI made inquiries regarding the status of Je-

wat's bonds and was told that the bonds were forthcoming.

Jewat contracted with Iowa Concrete Breaking Corporation (ICBC) to provide pavement-breaking equipment and workers. Jewat started work and encountered problems but completed Phase I with the help of RCI. Jewat did not complete Phase II. Jewat's Phase I problems included not making timely progress on the concrete breaking, failure to make payments to ICBC and an inability to pay workers. On several occasions, RCI made certain payments on behalf of Jewat.

Jewat then obtained from appellant Central National Insurance Co. of Omaha (CNICO) the performance and labor and material bonds required by the subcontract. Ronald Risdon, bonding agent for CNICO, engaged in various communications with Jewat and with the Small Business Association about Jewat before issuing the bonds. However, although Risdon knew RCI was the general contractor on the project, he did not contact RCI before issuing the bonds despite his conflicting information regarding completion dates for Jewat's work and his knowledge that Jewat's contract with RCI was dated five months earlier.

Jewat went out of business still owing money to ICBC. ICBC sued Jewat, CNICO, RCI, and its surety, St. Paul Fire and Marine Insurance Company (St. Paul). The parties stipulated that ICBC was owed $25,321.83 by Jewat but disagreed on who was liable. Additionally, over CNICO's objections, the trial court granted the motion of RCI and St. Paul to amend their pleadings to include a cross-claim for contribution or indemnification against CNICO.

At trial, RCI's president William Quick testified that because Jewat was a minority contractor without a large capital base, its inability to meet financial obligations was not immediately troubling because such problems were not uncommon with minority contractors.

Finding CNICO liable, the trial court awarded ICBC its stipulated damages plus attorney fees of $8,500. RCI and St. Paul were awarded damages of $10,961.65 plus attorney fees of $8,000. The trial court also found RCI, St. Paul and CNICO jointly and severally liable on the monies owed ICBC, found CNICO primarily liable for these amounts, and awarded RCI and St. Paul indemnification against CNICO.

## ISSUES

1. Did the trial court err in finding CNICO liable to ICBC?

2. Did the trial court abuse its discretion in permitting RCI's cross-claim against CNICO?

3. Did the trial court err in finding CNICO liable to St. Paul and RCI for indemnity?

4. Did the trial court err in finding CNICO liable to RCI?

5. Did the trial court err in awarding ICBC attorney fees?

## ANALYSIS

Generally,

[F]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01. Also,

[E]ven though there be evidence to support factual findings, [the reviewing] court may order a reversal if, upon reviewing the entire evidence, [it is] left with a firm conviction that a mistake has been made.

*State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971).

### I.

CNICO maintains that because its bonds do not cover breaches occurring before the bonds are executed and because it was prejudiced by the extent to which Jewat's contract had been completed when the bonds were executed, the trial court erred in finding CNICO liable to ICBC. We disagree.

CNICO presumes that the trial court retroactively applied the bonds. The trial

court did not explicitly state whether or not it did so. However, its findings, stating that "[the bonds] were to cover the * * * sub-contract between Jewat and RCI" and that

CNICO issued the bonds although they knew or should have known that the work *covered by them had already begun,*

(emphasis added), suggest that the bonds were retroactively applied.

■ Generally, a surety bond is to be liberally construed in favor of the obligee, *First National Bank v. Iowa Bonding and Casualty Co.*, 149 Minn. 279, 282, 183 N.W. 832, 833 (1921),

[but] is not retrospective in its application * * * [N]o liability attaches to the surety for defaults occurring prior to the date of execution of the performance bond.

*Peterson v. Schrieber*, 238 N.W.2d 722, 724 (Wis.1976). However,

In the absence of any showing of prejudice to the surety, it seems completely irrelevant to the purpose of the bond that the contractor had already used labor to perform part of the work [or] had obtained some materials * * * before the bond was executed and delivered.

*Reed v. Maryland Casualty Co.*, 244 F.2d 857, 862 (5th Cir.1957).

CNICO argues that default was evident prior to bond execution because Jewat failed to pay workers, failed to pay ICBC, failed to make sufficient progress, and was working on the contract without proper bonding. When examining rights under surety agreements,

[A]ll arguments proceed in recognition of the fact that a wide exploration of the facts is necessary to determine the nature of the respective claims and the situation and relationships of the various parties in connection with them.

*Reed*, 244 F.2d at 859.

Regarding the alleged pre-bond breaches of Jewat's subcontract, the trial court found:

At all times pertinent before the bonds were issued, RCI had no reason to be-

lieve Jewat had defaulted or would default on its obligation on the contract.

■ The trial court's finding is not clearly erroneous. Quick did not find Jewat's inability to make payments to workers or to ICBC problematical because such circumstances were not uncommon with minority contractors. Testimony indicated that when Jewat obtained additional equipment, progress was acceptable and at times exceeded that required. Finally, although Jewat technically breached its subcontract with RCI by not having proper bonding when it started work on the project, RCI would have been ultimately liable for ICBC's claim under the terms of RCI's general contractor's bond. If, in fact, RCI did not deem lack of proper bonding to be a material default, it was appropriate that the trial court did not do so either.

■ CNICO also alleges that because it lacked information regarding the extent of completion of the subcontract work prior to execution of the bonds, it should have no obligation under them. We cannot agree.

If a surety fails to seek important information that is *available to him*, he cannot, *in the absence of fraud* assert as a defense ignorance of facts which he should have known and considered prior to the execution of the contract. The law does not favor the indifferent, unseeing surety who fails to help himself.

*St. Paul Fire & Marine v. Commodity Credit Corp.*, 646 F.2d 1064, 1072 (5th Cir. 1981) (citation omitted) (emphasis in original). With regard to CNICO's investigation, the trial court found:

11. CNICO conducted an investigation into Jewat before issuing the bonds. It relied upon the representations made by Jewat regarding the status of the Mower County Project. Though CNICO knew RCI was the general contractor on the project, it never contacted RCI for any information regarding the project or Jewat.

CNICO issued the bonds although they knew or should have known that the work covered by them had already begun. CNICO did so because it was not an uncommon practice for them to do so.

These findings are supported in the record. Risdon testified that he did not check with RCI, the obligee on the bonds, regarding the project's progress before the bonds were issued, that he received no documents from RCI, and that he did not rely on anything from RCI in processing the bonds. Additionally, both bonds and another document signed by Risdon show the contract's date to be substantially prior to the execution of the bonds. A third document issued by Risdon in processing the bond applications indicated a project completion date of two weeks after the bonds' execution date. Risdon acknowledged, however, that two other forms he submitted to the Small Business Association indicated a completion date of a month later. A change in completion dates could indicate a change in starting dates as well. Given either starting date, work on the project may have started substantially before the date that the bonds were executed. CNICO failed to fully investigate the project for which it issued its bonds. It cannot now claim to be prejudiced because of a lack of information.[1]

Finally, we are unpersuaded by CNICO's argument that Jewat's default was inevitable because RCI owed Jewat less than Jewat owed ICBC. Quick testified that the amount Jewat allegedly owed ICBC was of little "significance" because ICBC billings did not refer to discount amounts for cash or volume or other possible reductions in the total amount Jewat owed ICBC.

Since CNICO could demonstrate neither a pre-bond breach nor prejudice from an alleged lack of information about Jewat's contract performance, we cannot say that the trial court's determination of CNICO's liability is erroneous.

## II.

■ CNICO argues that the trial court erred by allowing RCI and St. Paul to amend their pleadings to include a cross-claim for contribution or indemnification against it because evidence available at the time of the motion did not support the proposed cross-claim. We disagree.

"Amendment is liberally permitted and is generally granted absent prejudice to the adverse party." *Pischke v. Kellen,* 384 N.W.2d 201, 204 (Minn.Ct.App.1986) (citing *Wilson v. City of Eagan,* 297 N.W.2d 146, 151 (Minn.1980)). Also,

The decision whether to permit a party to amend pleadings rests within the discretion of the trial court and will not be reversed in the absence of a clear abuse of such discretion

*Warrick v. Giron,* 290 N.W.2d 166, 169 (Minn.1980) (citations omitted).

In the cases cited by CNICO to support its argument, amendment was procedurally impossible. This is not true here. *See Cybyske v. Independent School District No. 196,* 347 N.W.2d 256, 264 (Minn.1984) (Party/wife did not have standing to raise claim of nonparty/husband); *Eisert v. Greenberg Roofing, Etc.,* 314 N.W.2d 226, 229 (Minn.1982) (Motion to allow recovery of punitive damages in strict products liability case denied because strict products liability theory of recovery does not support such a recovery).

Additionally, this case is distinguishable from *Pischke* where the court determined:

[The] amendment would not serve a legal purpose because [plaintiff] has failed to establish evidence to support the allegation he seeks to amend.

*Pischke,* 384 N.W.2d at 204. Here, the evidence adduced before the motion to amend tended to support the possibility of such a claim. All defendants were potentially liable for Jewat's failure to pay ICBC. Logically, CNICO's status as Jewat's surety suggested a significant likelihood that it might have more liability than

---

1. To the extent appellant may argue that it was misled by Jewat:
   [T]he law is well established in this state that misrepresentations by the principal do not release a surety from his contractual obligations to the assured obligee.

*Watkins Products, Inc. v. Butterfield,* 274 Minn. 378, 379, 144 N.W.2d 56, 57 (1966) (footnote omitted).

the other defendants for Jewat's failure to pay.

CNICO's bond requires suits

[t]o be instituted before expiration of one (1) year from the date on which final payment under the subcontract falls due.

Jewat's final payment was due in November 1986, and the trial court approved the cross-claim in May 1988. CNICO argues that the bond provision was thereby violated. However, even assuming November 1986 to be the correct date, RCI and St. Paul first sought contribution or indemnification in their pretrial statement filed in November 1987. CNICO was aware at that time of the request for contribution or indemnification and its argument that it was unable to prepare to meet the action is unpersuasive. We agree with the trial court's observation that:

[T]he parties to this litigation have known for a very lengthy period of time the various claims made by the opposing parties. The material contained in the amendment, therefore, comes as no surprise to anyone.

This is consistent with the record which indicates that in addition to the November pretrial statement, RCI and St. Paul requested CNICO's permission in early December 1987 to make the cross-claim, but CNICO did not reply until late January 1988. There was no error in allowing the cross-claim.[2]

### III.

■ CNICO alleges that RCI's failure under its "duty of good faith and fair dealing" to inform CNICO, before execution of the bonds and without being asked, of information about Jewat allegedly increasing the risks of CNICO's suretyship, relieves CNICO of any liability.[3]

We have stated:

2. Appellant's claim that the RCI and St. Paul cross-claim violates Minn.Stat. § 544.36 (1986) was not made to the trial court and "an unlitigated issue may not be asserted for the first time on appeal." *Greer v. Kooiker*, 312 Minn. 499, 511–42, 253 N.W.2d 133, 142 (1977). Therefore, we do not address this argument.

3. RCI's alleged duty to inform CNICO of Jewat's supposed defaults presumes that RCI knew CNI-

The law governing surety arrangements indicates that although a creditor must exercise good faith in his dealings, he has no duty to look after the interests of the surety.

*MacKenzie v. Summit National Bank of St. Paul*, 363 N.W.2d 116, 120 (Minn.Ct. App.1985). Additionally, any duty of "good-faith and fair dealing" is qualified:

[T]he creditor, or obligee, to whom the surety's assurance is given is not bound to disclose to the surety unrequested information concerning the secured transaction. * * * Unless the creditor is aware that the surety is mistaken as to the duty, or there is a request for information by the surety, or the bond is executed in the presence of someone associated with the creditor, a creditor cannot be charged with withholding information that could have been discovered by the surety.

However,

the surety has a defense to liability if, before the obligation is undertaken, the creditor knew of facts unknown to the surety and which he had reason to believe were not known to the surety, the facts materially increased the obligor's risk and the creditor had adequate time to disclose them but failed in his responsibility.

*See St. Paul*, 646 F.2d at 1072, 1073 (citations omitted).

The trial court stated:

RCI had no duty to contact CNICO with respect to CNICO issuing the bonds to Jewat. At all times pertinent before the bonds were issued, RCI had no reason to believe Jewat had defaulted or would default on its obligation on the contract.

CO was Jewat's prospective surety. While we assume this is the case for purposes of our analysis, we note that this assumption is inconsistent with Risdon's testimony:

Q [by counsel for RCI and St. Paul] Is there anything in your file that would indicate [RCI] would know [who is] processing [the bond application]?
A [by Risdon] No, not that I know of.

Initially, we are not aware of any facts or circumstances within RCI's knowledge that CNICO could not have discovered had it fully investigated the circumstances surrounding Jewat's performance on its contract. Additionally, even if CNICO could not have discovered the facts known to RCI, this record does not suggest that the information RCI had would have "materially increased the obligor's risk." Risdon, who issued the bonds without much investigation, evidently did not think Jewat's situation was worth investigating. Also, Quick, whose company was ultimately liable during the period that Jewat was not bonded, was not significantly concerned about Jewat's performance. If neither those responsible for executing the bonds nor those liable because of their non-issuance demonstrated concern about Jewat, we cannot find error in a trial court's conclusion which is consistent with the attitude evidenced by these parties.

## IV.

CNICO also argues that RCI's failure to contact CNICO regarding Jewat's performance after the bond was issued relieves CNICO of liability. Alternatively, CNICO argues that if it is liable at all, the trial court's award of $10,961.65 is excessive because the evidence only supports an award of $4,666.25. We disagree.

The trial court found

13. With respect to Phase II of the Mower County Project, Jewat failed to completely perform the work required by the May 13, 1985 subcontract with RCI. RCI was therefore compelled to complete performance of the subcontract.

14. The reasonable costs expended and incurred by RCI to complete the subcontract were $24,065.81. The balance owed Jewat under the subcontract was $13,104.16. Thus, the amount RCI expended exceeded the balance of the subcontract price by $10,961.65.

The $24,065.81 figure is supported by oral and documentary evidence produced at trial, and the $13,104.16 found to be due Jewat under its subcontract is consistent with the subcontract's amount and Quick's

testimony regarding what had previously been paid to and on behalf of Jewat. $10,961.65 is the amount by which RCI's costs exceeded Jewat's contract price. The trial court's specific designation of RCI's completion costs as "reasonable" is supported in the record. Further, testimony on the $4,666.25 figure claimed by CNICO refers only to an alleged overpayment of Jewat by RCI.

■ Any failure of RCI to notify CNICO of Jewat's post-bond nonperformance is harmless and the trial court did not err in awarding to RCI the amount directly supported by the record.

## V.

■ Generally,

attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery

*Barr/Nelson v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn.1983). CNICO argues that because its bonds do not expressly cover attorney fees, such fees were improperly awarded. We disagree.

"The performance bond is the contract between the parties and thus contains the terms of their agreement," *Barr/Nelson*, 336 N.W.2d at 53. The payment bond issued by CNICO allows for suits by Jewat's unpaid creditors and states "[RCI] shall not be liable for the payment of any costs or expenses of any such suit." Attorney fees are a component of the expenses of a lawsuit.

Further, both of CNICO's bonds incorporate RCI's subcontract which required Jewat to undertake all obligations relative to RCI that RCI had relative to the state. By statute, RCI was required to provide a labor and material bond:

saving [the state] harmless from all costs and charges that may accrue * * * for the enforcing of the terms of the bond, * * * including reasonable attorney's fees, in any case where such action is successfully maintained. * * *

Minn.Stat. § 574.26 (Supp.1985). Therefore, because Jewat was required to obtain a bond covering "all the terms, provisions and conditions of the subcontract," both

bonds, by incorporating the subcontract's language, require CNICO to pay attorney fees.

■ CNICO next argues that the limit of its liability is the face amount of a bond. We cannot agree. Generally "those who write surety bonds are * * * regarded as underwriters of contracts of insurance. They are not favored by the law." *Farmers State Bank of Madelia v. Burns*, 212 Minn. 455, 463, 4 N.W.2d 330, 334 (1942). Additionally, it has been held that where a bond covers both a sum and attorney fees, the surety is liable for attorney fees in addition to the penalty sum of the bond. *See Boliver v. Surety Co. of the Pacific*, 72 C.A.3d Supp. 22, 140 Cal.Rptr. 259 (1977); *Truax v. Capitol Life Insurance Co.*, 166 Okl. 153, 26 P.2d 755 (1933).

Finally, RCI and ICBC argue that the trial court erred in awarding them less than the attorney fees they requested. The trial court, after receiving documentation on the number of hours and reasonable fees per hour, determined what amount would constitute "a reasonable attorney's fee [award]." The trial court did not abuse its discretion in its attorney fees awards.[4]

## DECISION

The trial court's retroactive application of appellant's bonds is harmless because of a lack of a pre-bond breach or resulting prejudice. The trial court neither abused its discretion nor prejudiced CNICO's case by allowing RCI and St. Paul's cross-claim for indemnification or by subsequently granting them that right. The trial court did not err in allowing RCI to recover against CNICO or in apportioning attorney fees.

Affirmed.

---

**4.** Citation of *Alexander Construction Co. v. C & H Contracting*, 354 N.W.2d 535 (Minn.Ct.App. 1984), to argue that full attorney fees should be awarded is unpersuasive because *Alexander* based its attorney fee award on the fact that the critical evidence concerning attorney's fees was documentary, [and that this court] need not defer to the trial court's assessment of that evidence. *Alexander*, 354 N.W.2d at 539. An appellate court's ability to review documentary evidence has since changed from *de novo* to "clearly erroneous." *See* Minn.R.Civ.P. 52.01. Therefore, *Alexander* is not applicable to these facts.