LEONARD C CARNAGHI, INC v AMWEST SURETY INSURANCE
COMPANY

Docket No. 205605. Submitted October 13, 1999, at Detroit. Decided July
14, 2000, at 9:05 A.M.

Leonard C. Carnaghi, Inc., brought an action in the Oakland Circuit
Court against Amwest Surety Insurance Company, seeking to
recover payments pursuant to a payment bond issued by the
defendant to a contractor for whom the plaintiff worked as a sub-
contractor on a public building project. The contractor and the
public entity entered into a contract in October 1993 and the plain-
tiff entered into subcontracts with the contractor in March 1995.
The plaintiff finished its work in May 1995 and sought payment.
The contractor and the public entity entered into a contract in June
1995 that amended their October 1993 contract to include the work
the plaintiff had performed and required the contractor to furnish
performance and payment bonds. The contractor then purchased a
payment bond issued by the defendant in August 1995. The bond
specifically referenced the June 1995 contract. The contractor filed
for bankruptcy and failed to make any payments to the plaintiff.
The court, Fred M. Mester, J., granted summary disposition in favor
of the defendant, finding that the payment bond did not relate back
to the plaintiff's work because the work had been completed
before the bond was issued. The plaintiff appealed.

The Court of Appeals *held*:

1. A surety on a payment bond for public works construction
may be liable under the payment bond for work or materials fur-
nished before the bond is issued. The trigger or default giving rise
to the claim against the surety is the failure to pay for construction
material or services when payment is due, as opposed to when the
materials are acquired or the labor is performed. In this case, there
is no retrospective application of the payment bond simply because
the plaintiff had completed its job before the bond was issued.

2. The June 1995 contract clearly amended parts of the October
1993 contract and authorized the work performed by the plaintiff.
The bond's reference to the June 1995 contract includes those pro-
visions that remained in effect under the October 1993 contract.

The order granting summary disposition must be reversed and the matter must be remanded for further proceedings.

Reversed and remanded.

1. BONDS — SURETYSHIP AND GUARANTEE — PUBLIC WORKS CONSTRUCTION — PAYMENT BONDS.

A principal contractor is required to provide a performance bond and a payment bond to the governmental unit before construction can begin on any public building project exceeding $50,000 in value; the payment bond is solely for the protection of claimants; a claimant is a person who furnished labor, material, or both, used or reasonably required for use in the performance of the contract (MCL 129.201, 129.203, 129.206; MSA 5.2321[1], 5.2321[3], 5.2321[6]).

2. BONDS — SURETYSHIP AND GUARANTEE — PUBLIC WORKS CONSTRUCTION — PAYMENT BONDS.

A surety on a payment bond for public works construction may be found liable under the bond for work or materials furnished before the bond was issued; the trigger or default giving rise to the claim against the surety is the failure to pay for construction material or services when such payment is due, as opposed to when the materials are acquired or when the labor is performed (MCL 129.201, 129.203, 129.206; MSA 5.2321[1], 5.2321[3], 5.2321[6]).

*Abbott, Nicholson, Quilter, Esshaki & Youngblood, P.C. (by Carl F. Jarboe and Timothy J. Kramer)*, for the plaintiff.

*Frank, Stefani & Haron, P.C. (by Sidney L. Frank and Brady G. Stefani)*, for the defendant.

Before: JANSEN, P.J., and SAAD and GAGE, JJ.

JANSEN, P.J. Plaintiff appeals as of right from an order granting summary disposition in favor of defendant in this action where plaintiff attempts to recover payments pursuant to a payment bond issued by the defendant to a contractor for whom the plaintiff worked as a subcontractor. We reverse and remand.

On October 28, 1993, the Charter Township of West Bloomfield entered into a contract with U.S. Environ-

mental Consulting, Inc., subsequently called Growth Environmental Services, Inc. (hereafter Growth), to perform underground environmental improvement work at two of West Bloomfield's fire stations. The contract involved supervision, monitoring, and testing for contamination in and around the area of the underground storage tanks. Ultimately, contamination was found and required that environmental remediation work be performed. On March 7, 1995, Growth entered into two subcontracts with plaintiff to excavate soil, provide backfill material, and construct a remediation system at the two fire stations. Pursuant to the subcontracts, Growth was to provide labor and material payment bonds.

On May 8, 1995, an affidavit of payment was submitted by plaintiff to Growth, indicating that plaintiff had completed its work at the sites. Plaintiff's labor and material as provided for in the subcontracts totaled $101,489.45. On June 26, 1995, Growth entered in a contract with West Bloomfield that amended the October 1993 contract to include the additional environmental work. The June 1995 contract required Growth to furnish performance and payment bonds in the amount of $33,000 each, which represented twenty-five percent of the approximate total of the actual construction costs. On August 22, 1995, Growth purchased a payment bond issued by defendant. The payment bond guaranteed payment up to the dollar amount of the bond ($66,000) to all subcontractors who furnished labor, material, or equipment for use in performance of the June 26, 1995, construction contract.

Shortly thereafter, Growth filed for bankruptcy. Growth had failed to make any payment to plaintiff

for the work done at the two fire stations under the subcontracts. Plaintiff then filed a complaint on April 19, 1996, seeking to recover the entire debt of $101,489.45 that Growth had failed to pay under the payment bond issued by defendant.[1] Defendant filed a motion for summary disposition under MCR 2.116(C)(7) and (10), arguing that plaintiff's claims were barred by the clear and unambiguous terms of the contract entered into between Growth and plaintiff. More specifically, defendant argued that because Growth had not received any payment from West Bloomfield, Growth had no obligation to pay plaintiff pursuant to the terms of the subcontract, and that defendant's liability under the payment bond could be no greater than Growth's liability.[2]

---

[1] Defendant later filed a third-party complaint against West Bloomfield, alleging that West Bloomfield was obligated to pay plaintiff under the terms of the June 1995 contract. The trial court ultimately granted summary disposition in favor of West Bloomfield, but there is no issue concerning this ruling in this appeal.

[2] We note that the June 1995 contract between West Bloomfield and Growth provided that West Bloomfield was not required to pay Growth unless West Bloomfield was deemed eligible to receive and received payments from the Michigan Underground Storage Tank Fund (MUSTFA). Invoices for reimbursement from the MUSTFA were submitted by West Bloomfield and Growth; however, the invoices were apparently never approved or paid by the MUSTFA.

Further, the subcontracts between Growth and plaintiff provided that Growth was to be paid by West Bloomfield and that plaintiff would not be paid until the ninetieth day after Growth authorized that the work at the sites was complete. If any amounts were retained or disallowed by West Bloomfield, the amounts would not be paid to plaintiff until Growth had received payment of such amounts from West Bloomfield. It is this provision on which defendant relied to argue that it was not liable to pay plaintiff, because defendant's liability under the payment bond would be no greater than Growth's liability to pay plaintiff under the subcontracts.

Although the contractual language appears to support defendant's argument, we believe that it would be premature for us to rule on this argument because the trial court did not rule on this argument below, the issue may require additional factual development, and the parties are not

In its reply brief to plaintiff's answer to the motion for summary disposition, defendant raised an additional argument, contending that plaintiff was not protected by the payment bond because all of plaintiff's work had been completed before the payment bond was issued. The trial court ultimately granted summary disposition in favor of defendant, ruling that the payment bond did not relate back to plaintiff's work because plaintiff had completed its work by May 8, 1995, and the payment bond was not entered into until August 22, 1995.

We review de novo a trial court's ruling with regard to a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Defendant filed the motion under MCR 2.116(C)(7) and (10). Under either subsection, affidavits, depositions, admissions, or other documentary evidence may be submitted in support of or in opposition to the motion and if such evidence is submitted, then the court must consider that evidence. MCR 2.116(G)(2) and (4). We reverse the trial court's order because we find the court's ruling to be an error of law; thus, defendant is not entitled to judgment as a matter of law on the basis of the issue before us.

Pursuant to MCL 129.201; MSA 5.2321(1), a principal contractor is required to supply a performance bond and a payment bond to the governmental unit before construction can begin on any public building project exceeding $50,000 in value. See, also, *W T Andrew Co, Inc v Mid-State Surety Corp*, 450 Mich 655, 658; 545 NW2d 351 (1996). A payment bond,

---

pursuing the issue on appeal. On remand, the parties are certainly free to further develop this issue.

such as the one at issue here, is to be in an amount fixed by the governmental unit, but not less than twenty-five percent of the contract amount, and is solely for the protection of claimants. MCL 129.203; MSA 5.2321(3). "Claimant" is statutorily defined as "a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract." MCL 129.206; MSA 5.2321(6). As noted by the Court in *W T Andrew, supra,* p 659, the Legislature adopted MCL 129.201; MSA 5.2321(1) to protect contractors and materialmen in the public sector to ensure that they do not suffer injury when other contractors default on their obligations. Without this legislation, contractors and materialmen were otherwise denied the security afforded when identical work or materials was provided to the public sector because contractors and materialmen may not obtain a mechanics' lien on a public building. *W T Andrew, supra,* p 659; *Kammer Asphalt Paving Co, Inc v East China Twp Schools,* 443 Mich 176, 181; 504 NW2d 635 (1993).

Initially, no performance bond or payment bond was supplied by Growth, in relation to the October 1993 contract, because the anticipated costs were less than $10,000. However, the June 1995 contract provided for payment in excess of $200,000 for remediation work done at the two fire stations and required that Growth furnish a payment bond. The payment bond was ultimately obtained on August 22, 1995, and specifically referenced the June 1995 contract. The trial court ruled that because plaintiff had completed all work before the execution of the payment bond, the payment bond could not retroactively apply to the work performed, relying exclusively on this Court's

decision in *In re Slack Estate*, 202 Mich App 627; 509 NW2d 861 (1993).

*In re Slack Estate*, p 630, states the general rule that in the absence of a clearly expressed contrary intent, guaranty contracts have prospective application only and do not cover events that occur before the date the contract becomes effective. However, *In re Slack Estate* is entirely distinguishable from the present case because that case involved a surety contract in the context of a fiduciary's duty as the personal representative of an estate. This Court simply held that the bond was a guarantee against future improprieties made by the fiduciary. In other words, the bond was payable only in the event of the fiduciary's failure to perform her duty after the bond was given, relying on explicit language in the suretyship contract and provisions of the Probate Code.

The present case, on the other hand, involves a public works construction bond, with its own set of statutory requirements. Although no Michigan case has addressed the precise issue before us, other jurisdictions have addressed the retrospective applicability of a public works construction bond. In those cases, relied on by plaintiff, the courts have held that a surety may be liable under a payment bond for work or materials furnished before the bond is issued and that the trigger or default giving rise to the claim against the surety is the failure to pay for construction material or services when payment is due, as opposed to when the materials are acquired or when the labor is performed. *Iowa Concrete Breaking Corp v Jewat Trucking, Inc*, 444 NW2d 865 (Minn App, 1989); *Parliament Ins Co v L B Foster Co*, 533 SW2d

43 (Tex App, 1975); *Reed v Maryland Casualty Co*, 244 F2d 857 (CA 5, 1957).

In *Reed*, the court, after first recognizing the general rule that surety contracts do not apply to preexisting defaults, held that the language in the construction contract indebted the surety to all obligations undertaken in the performance of that contract, regardless of whether those obligations were incurred before execution of the surety contract. The court in *Reed* further held that even though some of the transactions under the construction contract were completed before the execution of the surety bond, no default had occurred before the execution of the bond and, therefore, the default was prospective and within the bond's coverage. See *id.*, pp 861-862.

In *Parliament Ins Co*, materialmen brought an action against a surety to recover on a subcontractor's performance-payment bond executed in favor of the contractor. Like the present case, the surety argued that it was not liable for materials furnished by the subcontractor before execution of the bond. The court rejected this argument and held that it was irrelevant if some of the materials were furnished to the principal contractor before the execution of the bond, as long as such labor and material were used in performance of the work that was covered by the subcontract. The court further noted that there was nothing in the bond that would exclude payment for materials that were used on the project if they were furnished or purchased before the bond was executed. See *Parliament Ins Co, supra*, pp 50-51.

Similarly, in *Iowa Concrete Breaking Corp*, the contractor obtained performance, labor, and material bonds required by the subcontract after the contrac-

tor began using the labor and materials provided by the subcontractor. The contractor ultimately went out of business before it paid the subcontractor and the subcontractor brought suit against the surety. In ruling in favor of the subcontractor, the court first noted that no liability attaches to the surety for defaults that occur before the date of the execution of the performance bond. The court held, however, that in the absence of any showing of prejudice to the surety, it was irrelevant to the purpose of the bond that the contractor had already used labor to perform part of the work and had obtained some materials before the bond was executed and delivered. See *Iowa Concrete Breaking Corp, supra,* p 868.

In light of the purpose of a payment bond to be solely for the protection of those furnishing labor or material required for use in a public construction contract, MCL 129.203; MSA 5.2321(3), we find these out-of-state cases to be persuasive authority and follow them. Accordingly, the fact that plaintiff had completed its job at the two fire stations does not exonerate the surety from liability under the payment bond. Rather, the default occurs when the subcontractor, here plaintiff, was not paid by Growth under the terms of the subcontracts. Thus, there is no retrospective application of the payment bond simply because plaintiff completed its job under the terms of the subcontracts before execution of the payment bond. Consequently, the trial court erred in ruling that the payment bond did not apply to plaintiff because plaintiff had completed its work before the payment bond became effective.

Moreover, defendant's contention that plaintiff's work was performed pursuant to the October 1993

contract, but not pursuant to the June 1995 contract, is incorrect. Defendant's argument in this regard is that the payment bond does not apply to plaintiff's work because the payment bond refers to the June 1995 contract entered into between Growth and West Bloomfield, but that plaintiff performed its work pursuant to the October 1993 contract entered into between Growth and West Bloomfield. A reading of the October 1993 and June 1995 contracts indicates that they are not completely separate, as defendant maintains. The June 1995 contract specifically states that it *amends* the October 28, 1993, contract. Further, the June 1995 contract specifies:

> *Amendments.* The paragraphs of the original Contract titled, "Work," "Permits," "Insurance," "Time of Work," "Payment" and "Changes" are superseded and replaced by the provisions of this Amendment with all other original Contract provisions to remain in effect and be applicable to the work that is authorized and to be performed by this Amendment.

The clear and unambiguous terms of the June 1995 contract belie defendant's argument. Thus, it is clear that the payment bond's reference to the June 1995 contract includes those provisions that remained in effect under the October 1993 contract. Additionally, the June 1995 contract amendment clearly authorized the work performed by plaintiff because the June 1995 contract specifically provides for and authorizes the environmental remediation work done by plaintiff.

Accordingly, the trial court erred in granting summary disposition in favor of defendant on the basis that the payment bond did not apply to work performed by plaintiff before the execution of the payment bond. Instead, the trial court should have

focused on the default, that being Growth's failure to pay plaintiff pursuant to the terms of the subcontracts. It is not possible to determine from the present record when exactly Growth's default occurred. Although it is known that plaintiff completed its work by May 8, 1995, it remains unclear whether or when any representative of Growth actually authorized plaintiff's work as complete. It is further unclear whether or when payment to plaintiff became due in light of the "pay when paid" provision of the subcontracts. Therefore, we reverse the trial court's order and remand for further proceedings.

Reversed and remanded for further proceedings. Jurisdiction is not retained.