## The Tillotson & Wolcott Co. v. The Scottdale Machine & Mfg. Co.

*Contracts—Construction of written instruments—Natural and logical meaning of unambiguous language adopted—Surrounding facts and elements considered where language ambiguous, when—Guaranty for payments due from buyer under contract—Guarantors not liable for damages for breach of performance, when.*

1. Language of written instrument cannot escape its natural and logical meaning, if unambiguous.
2. If language of a written contract is ambiguous, facts and elements surrounding it must be employed to ascertain true meaning.
3. Ambiguity in written instrument to permit extraneous facts in interpretation should arise from language, and not be element foreign to context and forced therein to strain meaning apparent by language used.
4. Written instrument, guaranteeing payment by buyer of amounts due under contract, in which guarantors limited themselves specifically to payment of drafts for work completed, *held* not to extend beyond financing of payments for completed materials, and did not include damages for buyer's breach of contract.

(Decided October 25, 1926.)

Error: Court of Appeals for Cuyahoga county.

*Messrs. Tolles, Hogsett, Ginn & Morley,* for plaintiff in error.

*Messrs. Maurer, Bolton & McGiffin,* and *Messrs. Wiley, Marriner & Wiley,* for defendant in error.

Sullivan, J. The issue in this cause is not as complicated or as intricate as the voluminous briefs and elaborate arguments would imply. However,

both have shed light on the questions involved, and have been drawn upon in all their detail to shed light upon the examinations of the errors assigned, which are that the court below misinterpreted the language of what is known and designated throughout the pleadings and the record as a guaranty, as distinguished from the obligations of a principal or a surety to a certain instrument of writing, which must be analyzed and interpreted in the light which it sheds upon itself as well as from the facts and circumstances creating its environment, which reveal the true intent and purpose of its specific language, always bearing in mind that the language cannot escape its natural and logical meaning, if unambiguous, and, if ambiguous, that all the facts and elements surrounding it must be employed to ascertain its true meaning and that interpretation given which naturally flows from consideration of every fact in the case.

If the writing is unambiguous, then it speaks for itself, for it is an axiom that the court must adhere to the language if the context is clear and unmistakable, and must only resort to extrinsic aid when the language falls short of explaining itself. It is an error of construction to wedge an ambiguity into a written instrument, where in and of itself such situation does not naturally and logically arise, but only appears by injecting an interpretation which the language itself does not warrant. Ambiguity should arise from the language, and not be an element foreign to the context, forced therein for the purpose of straining a meaning which is apparent by the words, phrases, and clauses therein employed.

In the guaranty here in question it is claimed

that the proper interpretation is that it obligates the signers to guarantee the faithful performance by the principal of the terms of the contract between the plaintiffs in error and defendant in error, to the extent of becoming liable for default in its terms, or, in other words, liable for damages for breach of contract in the performance of its terms by the company known as the Cleveland Machinery & Supply Company, with respect to its contract with the Scottdale Machine & Manufacturing Company. In this wise it is well to note that in the formulation of a contract of guaranty, where it is intended and understood that not only payments for the completed product shall be guaranteed, but also the specific performance of its terms, reaching to a breach thereof, there is not such dearth of language in the vocabulary as to lead to such impoverishment in the use thereof that it cannot be specifically stated that the terms of the contract with respect to performance could not have been specifically set forth. To create liability for breach of any and all of the terms of a guaranty to the limit of damages for default it is only necessary to draw upon the plenitude of the English language to so denominate it in the bond. It is only fair and reasonable to say that if such were the intention, the necessary language could have been employed. There are more ways than one to express such an intention. To hold that there was such intention, in the absence of language to that effect, does violence to the rules of construction, one of which is that one uses that language necessary to convey his intention, and that when he fails to use such language he does not so intend.

It is axiomatic, that even courts cannot make new contracts, for such would lack mutuality of consent, and courts are not parties to contracts, for the reason that their only province is to interpret contracts.

With these principles as a basis of interpretation, we look to the guaranty in question, which is as follows:

"Cleveland, Ohio, March 30, 1916.

"Gentlemen:   The undersigned, The Tillotson & Wolcott Company, and all of its associates under an agreement with the Cleveland Machinery and Supply Company, called the buyer, hereby guarantee pro rata as shown opposite our respective names, the payment by the buyer of all amounts due to you under a contract between said buyer and your company, dated March 9, 1916, for $50,000, subject to the fulfillment on your part of all the terms and conditions of said contract with said buyer, such payment to be made upon presentation at the office of the Tillotson & Wolcott Company, Guardian Building, Cleveland, Ohio, of sight drafts upon The Tillotson & Wolcott Company for the proper amounts attached to carrier's bill of lading for merchandise deliverable under said contract, accompanied by proper invoices and approving certificates of inspection executed by the inspectors of the buyer and his consignee.

"Yours very truly,

"The Tillotson & Wolcott Company,

| | |
|---|---|
| "E. G. Tillotson, Prest. | 10% |
| "E. C. Tillotson | 25% |
| "J. A. House | 10% |
| "C. A. Paine | 5% |

"L. A. Murfey                        25%
"C. L. Murfey                        25%
"Scottdale Machine & Manufacturing Co., Scott-
    dale, Pa."

Instead of analyzing the terms of this guaranty to determine whether its purport is to guarantee payments only, let us see if there is any language which affirmatively obligates, as guarantors, the bankers, socalled, to pay damages for breach of performance on the part of the Cleveland Machinery & Supply Company. In other words, it is not so much a question whether such a construction is deducible from the guaranty as it is whether there is any language, either by inference or actual use, that creates such a legal obligation, keeping in mind always that language is the only medium that can carry such a conclusion unless the language is ambiguous and forces the application of extrinsic facts. We find a subject, a predicate, and an object, the trinity of construction, and the object is always payment of the drafts, conditioned upon specific provisions as to manner and method, and there is utter silence by word, phrase, or clause extending the obligation beyond mere payments—conditioned always upon the faithful performance of every provision of the contract by the Scottdale Company.

The bankers, with no object or motive, would not of their own volition extend the guaranty to full performance of the terms of the contract, and most assuredly would it be in violation of human instinct to engage in such an obligation when even the Scottdale Company was making no such demand. The entire record, with but two or three exceptions, shows that the Scottdale Company not only did

not engage the bankers to a liability for full performance of the terms of the contract, but actually ignored the bankers in its dealings with the Cleveland Company with respect to the contractual terms. The very character of the business of the bankers was foreign and antagonistic to the theory of conducting the line of business of the Cleveland Company. It is clear, convincing, and irresistibly obvious that they were financing the payment of war contracts of one of their customers, and not departing from their own functions, to become tradesmen in the manufacture of supplies for munitions of war. They drew their guaranty, and it is clear from the record, in the face of the surrounding contracts and the guaranty itself, that they did not transcend the bounds of their business as bankers, by aiding and supporting their patron to meet its financial demands with the Scottdale Company, which under the terms of its contract required evidence of the ability of the Cleveland Company to meet its financial obligations under its contract with the Scottdale Company. The provisions as to security for payment of drafts is very determinative of the view that the bankers limited themselves specifically to payment of drafts for work completed under the contract.

We find, upon examination of the guaranty sued upon, no language of an ambiguous nature that crosses over the line of mere payment to one of obligation for damages for breach, and if the language of this guaranty were ambiguous we fail to find any basis for interpreting the contracts or any correspondence relating thereto in such manner as to change the obvious meaning of the language of

the guaranty from that of a mere limitation with respect to the payment of drafts.

The suit in the federal court, wherein the bankers were in no wise a party, with respect to a judgment for damages against the Cleveland Company for breach of contract, strengthens the view of the limitation as to payment, and it is fairly, justly, and reasonably deducible from the record that in the absence of insolvency on the part of the Cleveland Company the liability claimed against the bankers could not be consistently prosecuted, for if the bankers were principals, as is argued, they would have been sued, and, if surety, allegations consistent therewith would have been made in federal court.

The absence of any language in the guaranty or the correlating instruments of writing tending to show affirmatively an obligation on the part of the guarantors to be answerable for breach of contract is the determinative element in the record in support of these views, and we find in the authorities later set forth herein corroborative proof. After all, the question is whether the view of defendant in error can be sustained without injecting foreign substance and strained meaning into language, which, under all the facts and circumstances of the case, is susceptible of determination by reason of its own clarity; and in the consideration of this case it must be noted that damages for breach of contract are based upon the theory of compensation for default of a party, which situation does not flow from the terms of the contract, but by a breach thereof.

There is one significant and impressive provision in the latter part of the instrument of writing

known as a guaranty which seems decisive against the contention of the defendant in error that the bankers were liable for any damages for breach of the terms of the contract, because this clause confines and limits their obligation in the guaranty to "merchandise deliverable under said contract." The payments were to be made upon presentation at the office of the Tillotson & Wolcott Company of sight drafts, drawn upon that company for the proper amounts, attached to the carrier's bill of lading for the goods deliverable. This clause is the dead line, so to speak, of the bankers' obligation, and from the record it seems clear that their obligation did not carry them beyond that boundary.

The force and effect of this situation is impregnated with the fact that the defendant in error had knowledge thereof, because the instrument of writing itself, dated March 30, 1916, and known as the guaranty, was directed to and received by the Scottdale Machine & Manufacturing Company. Thus the extent of liability assumed by the bankers was definitely communicated, in writing, to the Scottdale Machine & Manufacturing Company, and it is bound by its own possession of the fact. It may well be said from the record that the acts of the defendant in error were consistent with its knowledge of the limitations of liability on the part of the plaintiff in error, as specifically set forth in the guaranty as interpreted by its own light and all of the other surrounding facts and circumstances.

We think it unnecessary to discuss the question whether the Scottdale Company accepted the terms of the guaranty, or whether it elected to continue

the performance of the contract, even though at variance with its terms, as we are content to rest upon the proposition, deducible from the record, that the terms of the guaranty did not extend beyond the financing of the payments for completed materials. We quote to sustain our views, as follows:

"A guarantor, like a surety, is bound only by the words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used, is to be ascertained in the same manner as the meaning of similar words used in other contracts. The language used, is to be understood in its plain ordinary sense, as read in the light of surrounding circumstances, the situation of the parties, and the object of the guaranty, and that construction given which most nearly conforms to the intention of the parties." *Third National Bank* v. *Laidlaw,* 86 Ohio St., 91, 99, 100, 98 N. E., 1015, 1017.

To the same effect are *Legler, Adm'r.,* v. *United States Fidelity & Guaranty Co.,* 88 Ohio St., 336, 103 N. E., 897; *German Fire Ins. Co.* v. *Roost,* 55 Ohio St., 581, 45 N. E., 1097, 36 L. R. A., 236, 60 Am. St. Rep., 711; *Warner Gear Co.* v. *Bergdoll,* 253 Pa., 164, 97 A., 1085; *Whitall-Tatum Co.* v. *Manix,* 61 Misc. Rep, 615, 113 N. Y. S., 1010.

In *McAfee* v. *Wyckoff,* 44 Misc. Rep., 380, 382, 89 N. Y. S., 996, at page 997, Herrick, J., said: "The guaranty was: 'I guaranty payment on castings ordered by * * * as per their contract with you.' This is not a guaranty that the contract will be fulfilled in all its terms. It is not a guaranty against any breach of the contract. It is simply a guaranty of payment in accordance with the terms

of the contract; that is, that payment will be made for the castings delivered upon their delivery. * * * The plaintiff's claim to recover the difference between the contract price and the cost price of manufacturing the castings is a claim for damages for the breach of the contract, and is not a claim for payment for castings delivered. I can see no distinction between this case and that of *De Luka* v. *Goodwin*, 142 N. Y., 194, 36 N. E., 1056, and *Beagle* v. *Cable,* 55 App. Div., 155, 66 N. Y. Supp., 809. I must therefore hold that the plaintiff cannot recover upon the guaranty the difference between the contract price of the manufactured and untendered castings and what it would have cost to have manufactured them.''

To the same effect is *Acme Brick Co.* v. *West* (Tex. Civ. App.,), 215 S. W., 476.

Holding these views, the judgment of the lower court is reversed, and judgment is rendered for plaintiffs in error.

*Judgment reversed.*

LEVINE, P. J., and VICKERY, J., concur.