FIRST NATIONAL BANK OF CINCINNATI *v.* HEINE ET AL.

(No. 87CV12064—Decided May 19, 1988.)

Hamilton County Municipal Court.

*Eric M. Jensen,* for plaintiff.
*Glen E. Hazen, Jr.,* for defendants.

HOGAN, J. This case was tried on December 2, 1987, and was taken under advisement for decision. The parties were invited to file post-trial briefs and related correspondence and each has done so. All of these documents have been filed with the clerk of courts. All post-trial motions are denied.

The plaintiff, First National Bank

12

of Cincinnati, seeks to recover the sum of $2,775 from Jennie B. Heine and Ohio Casualty Insurance Company for breach of a lost securities bond. Heine filed a counterclaim against the bank on the basis of negligence, alleging specifically that the bank failed to discover that certain coupons had previously been paid when presented by someone other than the owner and by paying the coupons after Heine notified bank employees that the coupons were missing. The court resolves the case in favor of the plaintiff bank against both Heine and the insurance company.

Heine was the owner of a number of hospital facilities revenue bonds, the purpose of which was to finance the Fort Hamilton-Hughes Memorial Hospital Center project in Butler County, Ohio. Some of the bonds were to mature in January 1986; some were to mature in July 1986. The plaintiff bank's complaint for breach of the indemnity bond relates to the January coupons. Heine's counterclaim against the bank relates to the July coupons.

In any event, First National Bank was to act as paying agent. A copy of the relevant portions of the trust indenture was marked, identified and received in evidence as Plaintiff's Exhibit 1. By its express provisions, the holder of the bond assents to all the provisions of the indenture, one of which is quoted below:

"The paying agents may deem and treat the bearer of any coupon appertaining to any coupon bond as the absolute owner of such coupon * * * for the purpose of receiving payment thereof * * * and neither the City, the Trustee, nor the paying agents shall be affected by any notice to the contrary."

R.C. 1301.01(E) (UCC 1-201[5]) defines "bearer" as "* * * the person in possession of an instrument * * *."

Heine testified that she clipped the coupons from the bonds and placed both the January and July coupons in an envelope which she kept at her home. Heine also said that when she could not locate the coupons in December 1985, she called the bank and was referred to the bond transfer department and two ladies by the names of Janice and Marcie. Heine said that she reported to those persons the missing January and July coupons, but the bank's letter to Heine of January 28, 1986 makes reference to the January coupons only.

In any event, the letter sets forth the procedure by which the bank would honor the lost January coupons. Following the statutory plan described at former R.C. 1308.35(B) (now R.C. 1308.41), the bank's procedure was:

1. No payment would be made until ninety days after the maturity date;

2. The claimant would provide an indemnity bond naming the bank as obligee; and

3. The bank would audit the almost six thousand five hundred coupons maturing in 1986 upon receipt of a $25 fee from the claimant.

Attempting to comply with the bank's procedure, Heine as principal and the Ohio Casualty Insurance Company as surety executed a "lost securities bond" on April 14, 1986, acknowledging that the principal represented that the January coupons were mislaid, lost, stolen or destroyed. Under the terms of the lost securities bond, the principal and the surety agreed to indemnify the bank against loss arising by reason of payment to the principal for the value of the lost or stolen coupons. Heine paid a $100 premium to secure the indemnity bond.

The January coupons were apparently presented by a William Sanzinger, a graduate student who had resided with Heine's mother, to the Chevy Chase Savings and Loan in

Maryland and ultimately paid via normal banking collection procedures on January 23, 1986. The bank had no notice or knowledge of this fact. After receipt of the lost securities bond, the bank paid Heine the $2,775 for which it seeks recovery in this case.

Both Heine and the surety company declined to honor the bond because, according to their analysis, the "loss" occurred on January 23, 1986, when the non-owner presented the coupon and received payment. This, of course, was prior in time to the effective date of the coverage. The bank's position on this issue is that the "loss" occurred on April 15, 1986, the date when it made the duplicate payment on the same coupon to the owner. This later date was, of course, within the coverage period.

In the absence of contractual language to the contrary, bonds operate prospectively from their execution dates. See 11A Appleman, Insurance Law and Practice (1981) 407-408, Section 6712; *United States Fid. & Guar. Co.* v. *Fultz* (1905), 76 Ark. 410, 89 S.W. 93; *Peterson* v. *Schrieber* (1976), 71 Wis. 2d 498, 238 N.W. 2d 722. We believe the "loss" occurred on April 15, 1986, when the duplicate payment was made.

Timothy N. Tepe, the claims representative for Ohio Casualty Company, made the point for the plaintiff bank with his answers to counsel for the bank's questions, as the following colloquy will illustrate:

"Q. * * * Could you bear with me on a hypothetical, as far as losing occurring, suppose that these bearer coupons * * * came into the bank, and the bank, as the paying agent * * * is required to pay the $2,700 that's involved here * * * on those particular coupons when they're presented for payment * * * so when those coupons come in January, say January 23, 1986, as they did in this particular instance, 12 coupons were coming in, and wouldn't it have been the obligation at that particular time for the First National Bank to pay money out on those particular coupons?

"A. Being a bearer instrument, that is the way I understand it, yes.

"Q. Okay. Now, how would that be a loss, at that particular point, 12 coupons had come in, these were 12 coupons that the bank was entitled to pay at that particular time, and then the money that they were requested to pay goes out, where's the loss, their books balance out, 12 coupons come in and the money has gone out, so how is this a loss * * *?

"A. Well, they're calling on us to make a payment in satisfaction of a payment that's already been made. They had already paid the coupons, then told Mrs. Heine to secure the bond. That is enticing us for a loss, since once we issued the bond, there's going to be * * * a double payment.

"Q. Yes. But doesn't the loss only occur once the double payment is made? There isn't a tangible loss when those coupons were paid back on January 23rd of 1986?

"A. That may be. See your rationale — again I don't know all the intricacies of the banking industry. But as far as I can follow you, you seem correct."

It wasn't inevitable that plaintiff would sustain a loss at the time the bond was executed according to the knowledge of the parties at the time. Eugene W. Jacobs, Vice President and Trust Officer of the plaintiff bank, explained that payment on a bearer item is always discovered after the fact and that the only stop order that might be effective before the fact is a written alert to employees of the Madeira branch (Heine's branch) to watch for the presentment of certain coupons that could be red-flagged as lost or stolen. The point is that lost coupons

may be located by the owner and stolen coupons may be halted prior to payment if presented locally. A loss from double payment is possible, not inevitable. Whether or not a loss is unlikely, possible, probable or inevitable is a business decision to be made by the surety before it agrees to indemnify the obligee. Certainly it is free to refrain from shouldering the risk and decline the coverage or accept the coverage and make the appropriate premium adjustment. Nothing in the record discloses that the surety even requested routine information from the plaintiff bank relative to risk assessment. We agree with the bank's position that if the surety wanted to limit its risk, it was incumbent upon it to employ the language necessary to convey such intentions. See *Tillotson & Wolcott Co.* v. *Scottdale Machine & Mfg. Co.* (1926), 23 Ohio App. 399, 155 N.E. 409.

In addition to the date-of-loss argument, Heine and the surety argue in defense to the bank's claim that the bank was negligent in paying the matured January and July coupons to a thief or at least a non-owner after Heine had notified the bank that the coupons could not be located. Heine also asserts the theory of negligence to support her counterclaim for the payment of the July coupons which were not covered by the indemnity bond. The importance of this argument is that if the defendants can convince this court that the bank was negligent, then they can posture this case within the parameter of the rule that contracts of indemnity do not protect against the indemnitee's own negligence. See *George H. Dingledy Lumber Co.* v. *Erie RR. Co.* (1921), 102 Ohio St. 236, 131 N.E. 723; *Kay* v. *Pennsylvania RR. Co.* (1952), 156 Ohio St. 503, 46 O.O. 417, 103 N.E. 2d 751.

The first element of any negligence claim is the existence of a duty owed by one party to the other. The source of that duty may be statute, case law, contract or the reasonable-man criterion. See *Hill* v. *Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St. 3d 36, 521 N.E. 2d 780. R.C. 1301.02 gives to contracting parties the power to set the standard upon which to evaluate the performance under the contract. It has been established in this case that the language of the trust indenture gave the bank the authority to treat the bearer of the coupon as the owner, notwithstanding any notice to the contrary.

In addition to the language of the trust indenture, this court has considered the testimony of Jacobs to the effect that:

(1) the bank's obligation is to pay or return the coupons within 24 hours;

(2) the issue in question contained approximately 6,500 or 7,000 coupons;

(3) the bank is the paying agent for many issues; and

(4) the bank cannot issue a stop order on a bearer instrument.

This court concludes that with reference to the January coupons, there was no negligence on the part of the bank.

Lastly, with reference to the July coupons, it is arguable that the bank could and should have been able to stop the payment in July 1986 after more than six months' notice. However, if a conclusion is reached that the bank was negligent, the court is compelled to consider the negligence of Heine in failing to protect the coupons so as to have prevented their seizure by a thief in the first place. It is this court's conclusion that any negligence on the part of the bank is less than the negligence of Heine under the facts of this case and is less than fifty percent. The comparative negligence of the coupon owner prevents her recovery on the counterclaim.

Judgment is entered for the plain-

tiff, First National Bank of Cincinnati, against both Jennie B. Heine and the Ohio Casualty Insurance Company on plaintiff's claim in the amount of $2,750, plus interest and costs. The counterclaim is resolved in favor of the First National Bank of Cincinnati.

*Judgment accordingly.*