[Cite as *Meeker R&D, Inc. v. Evenflo Co., Inc*, 2016-Ohio-2688.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| MEEKER R&D, INC. | : | **O P I N I O N** |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | **CASE NOS. 2014-P-0060** |
| - vs - | | **and 2015-P-0017** |
| | : | |
| EVENFLO COMPANY, INC., | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

Civil Appeals from the Portage County Court of Common Pleas, Case No. 2011 CV 00685.

Judgment: Affirmed.

*David P. Bertsch*, Stark & Knoll Co., L.P.A., 3475 Ridgewood Road, Akron, OH 44333 (For Plaintiff-Appellee).

*Jude B. Streb*, and *Merle D. Evans, III*, Day Ketterer LTD., Millennium Center, Suite #300, 200 Market Avenue North, Canton, OH 44701-4213 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal arises following a bench trial regarding royalty and breach of contract claims involving a stationary play center for infants and toddlers, known as the ExerSaucer, which rocks, bounces, and spins. Meeker R&D, Inc. (Meeker) filed suit seeking damages for breach of contract and fraud against Evenflo Company, Inc. (Evenflo) for its failure to pay royalties it allegedly owed Meeker. Evenflo counterclaimed seeking declaratory judgment of the parties' respective agreements.

Evenflo also asserted claims for unjust enrichment, breach of contract, and breach of the implied duty of good faith and fair dealing based on its alleged overpayment of royalties to Meeker.

{¶2} Evenflo argues that the trial court was without jurisdiction to hear this case because it arises under federal patent law; the trial court erred in failing to grant partial summary judgment in its favor; the trial court erred in its patent infringement analysis; the trial court failed to apportion royalties; and the trial court erred in not holding Meeker responsible for royalty overpayments.

{¶3} Appellee cross-appellant, Meeker, timely filed a cross appeal and claims the trial court erred in finding that one of Evenflo's products, the ExerSaucer Bounce & Learn, was not covered by the ExerSaucer patent and that it erroneously held that Meeker was not entitled to royalties for another product, the Johnny Jump Up, for the duration of its twenty-year patent. For the following reasons, we affirm.

{¶4} Evenflo's five assigned errors state:

{¶5} "The trial court committed reversible error in denying Defendant/Appellant Evenflo Company, Inc.'s, Motion to Dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction for the reason that Plaintiff/Appellee Meeker R&D, Inc.'s breach of contract claim arises under federal patent laws over which federal courts have exclusive jurisdiction.

{¶6} "The trial court committed reversible error in denying Defendant/Appellant Evenflo Company, Inc.'s Motion for Partial Summary Judgment because the undisputed facts demonstrate that Meeker is not entitled to royalties on the Triple Fun Product.

{¶7} "The trial court's decision finding Meeker was entitled to royalty damages on the Triple Fun and Portable Fun is against the manifest weight of the evidence.

2

**{¶8}** "The trial court committed reversible error in failing to apportion the damages awarded for sales of the Triple Fun because Plaintiff/Appellee Meeker R&D, Inc. admitted both that it had no involvement in the development of two stages of this three-stage product, and that neither of those stages is covered by the '246 Patent.

**{¶9}** "The trial court committed reversible error in not finding that Defendant/Appellant Evenflo Company, Inc., is entitled to judgment on its counterclaim for unjust enrichment and breach of contract and/or royalty recoupment against Plaintiff/Appellee Meeker R&D, Inc., for royalty overpayments that resulted from accounting mistakes made by employees of Defendant/Appellant Evenflo Company, Inc."

**{¶10}** Evenflo first challenges the trial court's jurisdiction to consider this case alleging that the issues are governed by the application of federal patent law, which is exclusively limited to federal courts, and as such, cannot be decided by a state court.

**{¶11}** The United States Supreme Court has thoroughly outlined the limited ways in which federal courts have exclusive jurisdiction over a claim involving patent law in *Gunn v. Minton*, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013):

**{¶12}** "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' * * * There is no dispute that the Constitution permits Congress to extend federal court jurisdiction to a case such as this one, * * *; the question is whether Congress has done so * * *.

**{¶13}** "As relevant here, Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. §1331, and, more particularly, over 'any civil action arising under any Act of Congress relating to patents,' §1338(a). Adhering to the

3

demands of '[l]inguistic consistency,' we have interpreted the phrase 'arising under' in both sections identically, applying our §1331 and §1338(a) precedents interchangeably. * * * For cases falling within the patent-specific arising under jurisdiction of §1338(a), however, Congress has not only provided for federal jurisdiction but also eliminated state jurisdiction, decreeing that *'[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents.*' §1338(a) (2006 ed., Supp. V). To determine whether jurisdiction [is] proper in [a state] court * * *, therefore, we must determine whether it would have been proper in a federal district court-- whether, that is, the case 'aris[es] under any Act of Congress relating to patents.' (Emphasis added.)

{¶14} "For statutory purposes, a case can 'aris[e] under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted. See *American Well Works Co.* v. *Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S. Ct. 585, 60 L. Ed. 987 (1916) ('A suit arises under the law that creates the cause of action').  As a rule of inclusion, this 'creation' test admits of only extremely rare exceptions * * * and accounts for the vast bulk of suits that arise under federal law * * * [A] * * * patent infringement suit * * *, for example, ar[ises] under federal law in this manner because it was authorized by 35 U.S.C. §§271, 281.'" (Citations omitted.)

{¶15} When a claim involving federal patent analysis arises in a state law claim, however, as in this breach of contract suit filed by Meeker, there is a small category of cases under which federal courts still retain jurisdiction.  *Gunn, supra,* citing *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121 (2006). Evenflo bases its jurisdictional argument on this narrow category.

4

**{¶16}** At issue in *Gunn,* was a Texas-based legal malpractice lawsuit that was founded on an attorney's alleged failures in an underlying patent infringement suit. The result of the malpractice claim in *Gunn* was wholly contingent on the application and construction of federal patent law. *Id.* at 1060. The Texas Supreme Court held that the state court lacked jurisdiction based on the pivotal role that federal patent law played in the state court's decision. The United States Supreme Court granted certiorari and applied the four-part test for assessing whether federal courts have exclusive jurisdiction over a state law claim that involves a federal issue:

**{¶17}** "Does the 'state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities'? * * * That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." (Citations omitted.) *Id.* at 1065 citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308*, 313-314,* 125 S.Ct. 2363 (2005).

**{¶18}** In applying this test to the facts before it, *Gunn* held that the malpractice suit did not satisfy the third prong, i.e., the federal issue was not substantial in the "relevant sense." *Id.* at 1066. *Gunn* explained that although the federal patent legal analysis was substantial and important to the parties and to the resolution of the case,

"it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id.* Instead, the "*substantial inquiry * * * looks * * * to the importance of the issue to the federal system as a whole.*" (Emphasis added.) *Id.* Thus, the inquiry's focus is on the broader significance to the federal government, not on the litigants. *Gunn* also explained that the case before it likewise presented no significant impact on the development of a consistent body of federal patent law and lacked any precedential value in subsequent patent cases based on the retrospective nature of a malpractice case. *Id.* at 1067.

{¶19} *Gunn* also held that the malpractice case also failed to satisfy the fourth prong of the test, i.e., the balance of state versus federal responsibilities, explaining that "[w]e have no reason to suppose that Congress—in establishing exclusive federal jurisdiction over patent cases—meant to bar from state courts state legal malpractice claims simply because they require resolution of a hypothetical patent issue. * * * [A]lthough the state courts must answer a question of patent law to resolve [the] legal malpractice claim, their answer will have no broader effects. It will not stand as binding precedent for any future patent claim; it will not even affect the validity of [the] patent." *Id.* at 1068.

{¶20} Other courts have considered comparable cases involving state court jurisdiction over royalty claims arising from federal patents. In *Mirowski Family Ventures, LLC v. Boston Scientific Corp.*, 958 F.Supp.2d 1009 (S.D. Ind.2013), the Southern District of Indiana addressed this federal jurisdictional issue in a case involving a dispute of royalties arising via a breach of contract claim. The district court in *Mirowski* dismissed the case finding that it lacked jurisdiction to proceed. It explained

that the patent in issue before it was expired and that its application would have no future impact and had no importance to the federal patent system as a whole. *Id.*

**{¶21}** In *Univ. of Ky. Research Found., Inc. v. Niadyne, Inc.*, 2013 U.S. Dist. LEXIS 158018, the Eastern District of Kentucky remanded the case back to state court since the request for removal to federal court was beyond the 30-day rule. However, before remanding, it analyzed the pleadings in issue and explained that the complaint was not one "arising under federal law," but that it instead sought payments for royalties and an accounting for the transactions involving the technology in issue. Thus, it opined that the suit did not appear to be a case arising under federal patent law for jurisdictional purposes "'merely because questions of patent law may arise in the course of interpreting a contract.'" *Id.* at 11-12. However, *Niadyne* believed the counterclaim asserting an actual patent infringement claim implicated a substantial federal issue. However, it remanded the case to state court based on the untimely removal.

**{¶22}** In applying *Gunn* to the facts before us, we agree with Meeker. This is a breach of contract case that relies on the application of patent law principles to determine whether Evenflo breached the parties' agreements. As in *Gunn, supra*, although the application of patent law is critical to the resolution of this case, this case does not impact the federal system as a whole. In addition, and as in *Mirowski Family Ventures, LLC*, supra, the patent infringement analysis has no prospective application because the patents in issue here are expired, and Meeker is seeking payment for royalties it should have received. Further, Evenflo counterclaimed for royalties it allegedly already overpaid. Thus, the trial court did not err in rejecting Evenflo's motion to dismiss based on a lack of subject matter jurisdiction.

{¶23} In its second assigned error, Evenflo challenges the trial court's denial of its motion for summary judgment arguing that Meeker was not entitled to royalties on the ExerSaucer Triple Fun because it claims that the Triple Fun did not result from Meeker's consultation with Evenflo. Thus it claims that the Triple Fun did not satisfy the parties' license agreement governing Evenflo's obligation to pay Meeker royalties.

{¶24} We review this argument arising from the trial court's denial of Evenflo's motion for summary judgment de novo as delineated in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶7-8 citing *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990). Summary judgment is appropriate when construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp.,* 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus (1995).

{¶25} The parties agree that Evenflo's obligation to pay Meeker royalties is governed by Sections 3.1 and 1.2 of the parties' License Agreement, which is attached to both their 1991 and 1994 Consulting Agreements as appendix A. The license agreements state in pertinent part:

{¶26} "Section 3.1 Royalty Payable by EVENFLO

{¶27} "For the rights granted to EVENFLO hereunder, EVENFLO shall pay MEEKER royalty upon all sales of all Licensed Articles. * * * Royalties shall be payable on Licensed Articles until the respective patent expires (for patented products), or until

8

the expiration of seventeen (17) years from the date of the first commercial sale (for unpatented products).

**{¶28}** "* * *

**{¶29}** "Section 1.2 Licensed Articles

**{¶30}** "The term 'Licensed Article' shall mean new products which result from Meeker's consultation for Evenflo as a result of a Consulting Agreement dated October 1, 1991 [and/or October 1, 1994], and which are covered by Licensed Patents or new products which both parties agree in writing are included within the term 'Licensed Articles.'

**{¶31}** "* * *

**{¶32}** "This Agreement shall be from the Effective Date until EVENFLO stops selling Licensed Articles. Termination shall not effect [sic] the obligation of EVENFLO to pay all royalties accrued under Section 3.1 of this Agreement."

**{¶33}** Thus, Evenflo must pay Meeker royalties for "new products which result from Meeker's consultation for Evenflo" that are "covered by" a "Licensed Patent," or for "new products which both parties agree in writing are included within the term 'Licensed Articles.'" Neither party claims that the parties have agreed in writing to include the ExerSaucer Triple Fun as a "Licensed Article." Thus, we must determine if the ExerSaucer Triple Fun is a new product resulting from Meeker's consultation for Evenflo and whether it is covered by a Licensed Patent.

**{¶34}** Evenflo alleges that the evidence clearly established that Meeker was not entitled to royalties resulting from the ExerSaucer Triple Fun since it did not "result from" Meeker's consultation in 1996 because the Triple Fun was a new product that was conceptualized six years after Meeker's consultation with Evenflo ended and since the

product changed from simply a three-legged activity center to a four-legged activity center that converts to a toddler's table.

{¶35} Meeker counters that the ExerSaucer Triple Fun was indeed encompassed by the parties' License Agreement because it was essentially a modified or enhanced version of its patented product and based on and evolved from Meeker's original Licensed Article, i.e. the ExerSaucer. We agree.

{¶36} The ExerSaucer Triple Fun was advertised as a new version of the ExerSaucer, which encompasses the patented rock, spin, and bounce innovation that was the basis for the product's success. Evenflo's ExerSaucer Triple Fun is one of many subsequent modifications of this stationary play center based on the ExerSaucer foundation. Although the ExerSaucer Triple Fun includes the new feature of converting to a play table, it nonetheless is an ExerSaucer, a new product that "result[ed] from Meeker's consultation for Evenflo * * *." And as testified to by Meeker's expert, the ExerSaucer Triple Fun was also still "covered by" the ExerSaucer patent '246 and during the patent period at the time.

{¶37} Evenflo attempts to exclude the ExerSaucer Triple Fun from its agreement arguing that it is a new product that was released approximately 12 years after the original ExerSaucer. However, Evenflo fails to acknowledge that the ExerSaucer Triple Fun is still an ExerSaucer, which meets the parties' agreed-upon definition of a "Licensed Article." The fact that this subsequent version of the ExerSaucer incorporated design ideas and innovations that improved the product does not alter the fact that the product continued to be an ExerSaucer that was "covered by" its '246 patent. Accordingly, the trial court appropriately denied Evenflo's partial motion for summary judgment, and Evenflo's second assigned error lacks merit.

{¶38} Evenflo's third assignment of error asserts that the trial court's decision finding Meeker entitled to royalty damages on the ExerSaucer Triple Fun and ExerSaucer Portable Fun is against the manifest weight of the evidence.

{¶39} The civil manifest weight of the evidence standard of review mirrors the criminal standard:

{¶40} "'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" * * * Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." * * * Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict * * * and judgment, most favorable to sustaining the trial court's verdict and judgment." (Citations omitted.) *Pelmar USA, LLC v. Mach. Exch. Corp.*, 2012-Ohio-3787, 976 N.E.2d 282, ¶10 (9th Dist.), quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

{¶41} In a breach of contract claim, the plaintiff must prove the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and damages. *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

{¶42} As spelled out under Evenflo's second assignment of error, this dispute is governed by the parties' License Agreements. The parties and their experts agree that in order to prove that the subsequent ExerSaucers are "covered by" the original ExerSaucer patents, Meeker must prove that the products in issue "resulted from"

11

Meeker's consultation and that they were "covered by" a licensed patent, which is essentially patent infringement.

{¶43} It is undisputed that Mr. Meeker and his associate devised the concept for the ExerSaucer in response to concerns about the dangers surrounding children's walkers. He and his associate invented the concept of placing a walker-type product on top of a saucer, like a child's sled, as a child's stationary activity center during the parties' License Agreement. They wanted the product to bounce and rock. Thereafter, an Evenflo employee, in collaborating with Meeker, suggested that the product should also spin like a lazy Susan. Evenflo retained an outside marketing firm that coined the signature ExerSaucer name. The parties obtained eight patents as a result of Meeker's work on the ExerSaucer.

{¶44} Meeker continued to contribute to the further enhancement of the ExerSaucer pursuant to its consulting agreement through 1997. Meeker continued to receive royalty payments until 2010 when the ExerSaucer royalty checks stopped, even though the ExerSaucer patents had not expired and in spite of the fact that Evenflo continued to sell ExerSaucers.

{¶45} Meeker's expert, Ray Weber, explained that both the ExerSaucer Triple Fun and the ExerSaucer Portable Fun were covered by patent '246, which is one of the eight patents obtained as a result of Meeker's work on the original ExerSaucer. Weber testified that the lazy Susan portion of the ExerSaucer Triple Fun and the ExcerSaucer Portable Fun were covered by the '246 patent. He likewise testified that the patent covered the height adjustment mechanism and the location of the legs in the peripheral area on both the ExerSaucer Triple Fun and the ExcerSaucer Portable Fun.

**{¶46}** Evenflo's expert, on the other hand, concluded that neither the ExerSaucer Triple Fun, nor the Portable Fun ExerSaucer, nor the Bounce & Learn ExerSaucer were "covered by" the '246 Meeker patent. The Evenflo expert explained that Evenflo's specific alterations in these subsequent versions of the ExerSaucer rendered the '246 patent inapplicable. Weber disagreed, and was subject to lengthy cross-examination regarding his opinion. Although Evenflo's enhanced versions of the ExerSaucer encompassed by the Portable Fun and Triple Fun made changes to the original ExerSaucer, these enhancements were nonetheless built upon the signature, foundational product that result from Meeker's consultation with Evenflo and that were covered by the ExerSaucer '246 patent.

**{¶47}** The trial court agreed with Meeker and noted that the experts' testimony was conflicting, but that it believed the two products were "covered by" the '246 patent in accordance with Weber's testimony. The trial court simply found Meeker's expert more credible and persuasive than Evenflo's expert's testimony. Accordingly, Meeker established that Evenflo breached the parties' written agreements by failing to pay it the royalties due.

**{¶48}** Evenflo also argues under this assigned error that the trial court improperly excluded Evenflo's patent counsel's written legal analysis regarding the ExerSaucer patent, which bolstered its position. However, its arguments in this regard are conclusory and fail to explain why this report should have been admitted or how it would have changed the outcome of the trial.

**{¶49}** Evenflo also argues that the trial court should have conducted a pretrial hearing to construe the patent claims as a federal court would have done in advance of the parties' trial and set forth a written decision detailing its patent analysis in advance

13

of trial. However, this is not a federal patent infringement case, but a state law case asserting breach of contract, and the parties agreed to have the agreement governed by Ohio law. Thus, these federal procedural requirements do not apply. Furthermore, Evenflo's counsel requested this claim construction hearing only two weeks before the trial. Thus, this argument lacks merit.

**{¶50}** Based on the foregoing, there is competent, credible evidence on the essential elements of Meeker's claim, i.e., the ExerSaucer Portable Fun and the ExerSaucer Triple Fun resulted from Meeker's consultation with Evenflo and were "covered by" the ExcerSaucer '246 patent. The trial court did not lose its way, and Evenflo's third assigned error lacks merit.

**{¶51}** Evenflo's fourth alleged error argues that the trial court committed reversible error in failing to apportion the damages awarded for sales of the ExerSaucer Triple Fun because Mr. Meeker admitted that Meeker had no involvement in the development of two stages of this three-stage product and since neither of those two stages is covered by the applicable patent.

**{¶52}** "[T]he appropriate standard of review in contract cases is whether the trial court erred as a matter of law. * * * Accordingly, we 'must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law.' *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 1996 Ohio 158, 660 N.E.2d 431. In so doing, we must keep in mind that 'an appellate court gives due deference to the trial court's findings of fact, so long as they are supported by competent, credible evidence.'" (Citations omitted.) *Fine v. U.S. Erie Islands Co.*, 6th Dist. Ottawa No. OT-07-048, 2009-Ohio-1531, ¶25.

14

{¶53} Meeker agreed in his testimony that the ExcerSaucer Triple Fun was different from the original ExerSaucer in that it had four legs instead of three and because it converted into a play table. Further, Meeker's expert witness, Weber, confirmed that the first and third stages of the ExerSaucer Triple Fun did not employ the hallmark rock, spin and bounce features of the original ExerSaucer, but were instead a play mat and table. Thus, Evenflo contends that the damages award should have been apportioned according to the divisible portion of the product. We disagree.

{¶54} The parties agreed to the following terms under Section 3.1 Royalty Payable by Evenflo:

{¶55} "For the rights granted to Evenflo hereunder, Evenflo shall pay Meeker royalty upon all sales of all Licensed Articles. The rate or royalty shall be two percent of the Net Sales Price of said Licensed Articles until the earned royalties exceed the total prepaid royalties, which were paid in accordance with the consulting Agreement, then the royalty rate shall drop to one and a half percent (1-1/2%.) Royalties shall be payable on Licensed Articles until the respective patent expires (for patented products), or until the expiration of seventeen (17) years from the date of the first commercial sale (for unpatented products.)"

{¶56} The parties defined "Net Sales Price" as:

{¶57} "[T]he term 'Net Sales Price' shall mean the price charged for Licensed Articles sold by Evenflo, or its subsidiaries or sublicensees, and not returned as defective, less such quantity, trade and cash discounts, allowances for freight, and taxes as are specified on the invoices of Evenflo or its subsidiaries."

{¶58} The amount of damages in this breach of contract case is dictated by the parties' agreement. When terms of a contract are clear and unambiguous, the

15

interpretation is a matter of law. *Durick v. Ebay, Inc.*, 7th Dist. Mahoning No. 05-MA-198, 2006-Ohio-4861, ¶14 citing *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.,* 15 Ohio St.3d 321, 322, 15 Ohio B. 448, 474 N.E.2d 271 (1984).

**{¶59}** Here, the parties did not agree to apportion damages upon Evenflo's development of successive, enhanced ExerSaucers, yet that is what Evenflo is requesting. Instead, the parties' License Agreement specifies the percentage amount that Meeker is to receive minus costs and expenses for the life of the product's patent. The parties are bound to the unambiguous terms of their agreement. *Tillotson & Wolcott Co. v. Scottdale Mach. & Mfg. Co.*, 23 Ohio App. 399, 155 N.E. 409 (8th Dist.1926). If Evenflo wanted to limit its percentage of royalties upon its development of enhanced ExerSaucers, "it was incumbent upon it to employ the language necessary to convey such intentions." *First Natl. Bank v. Heine*, 44 Ohio Misc.2d 11, 14, 541 N.E.2d 494 (M.C.1988). The fact that Evenflo failed to negotiate for a smaller percentage of royalties upon the issuance of subsequent, enhanced ExerSaucer products does not warrant rewriting the parties' agreement. Accordingly, Evenflo's fourth assignment of error lacks merit.

**{¶60}** Evenflo's fifth assignment of error argues that the trial court erred in failing to grant it judgment on its counterclaim for its erroneous overpayment of royalty payments to Meeker. It contends that the trial court erroneously rejected its claim on the basis that Evenflo had made a mistake of law in reading the parties' agreements and in calculating Meeker's royalties. It seeks return of money it overpaid Meeker on the bases of unjust enrichment, breach of contract, and/or recoupment arising from its

16

accounting employees' continuous mistake of fact, which allegedly resulted in these overpayments.

**{¶61}** Evenflo asserts that the trial court erroneously found that its overpayments were a result of its *mistake of law* in reading the parties' agreement governing royalties. To the contrary, Meeker asserts that the voluntary payment doctrine precluded the return of the alleged overpayments. The trial court agreed with Meeker.

**{¶62}** Our standard of review is de novo because this alleged error presents a purely legal question. *Terry v. Bishop Homes of Copley*, 9th Dist. Summit No. 21244, 2003-Ohio-1468, ¶11. Thus, we give no deference to the trial court's decision. *Id.*

**{¶63}** "A mistake of fact is defined as:

**{¶64}** "'Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in (1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or (2) belief in the present existence of a thing or material to the contract which does not exist, or in the past existence of such thing which has not existed.' *Black's Law Dictionary,* Fifth Edition

**{¶65}** "Money paid under mistake of fact, without consideration is generally able to be recovered. 73 Ohio Jurisprudence 3d (1986) 71. The Supreme Court followed this view in *Firestone Tire & Rubber Co. v. Central National Bank,* (1953) 159 Ohio St. 423, 112 N.E.2d 636, which stated in its syllabus:

**{¶66}** "'In the absence of fraud, duress, compulsion or mistake of fact, money paid under the mistaken supposition of the existence of a specific fact which would entitle the payee to the money, which would not have been paid had it been known to the payor that the fact did not exist, may be recovered.' 73 Ohio Jurisprudence 3d

17

(1986) 71. *Firestone Tire & Rubber Co. vs. Central National Bank, (1953)* 159 Ohio St. 423, 112 N.E.2d 636.

{¶67} "Conversely, a mistake of law is defined as:

{¶68} "'A mistake of law happens when a person, having full knowledge of the facts comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference, arising from an imperfect or incorrect exercise of judgment on facts as they are real.'  73 Ohio Jurisprudence 3d (1986) 74.

{¶69} "Money paid as a result of mistake of law is not recoverable as recited by 73 Ohio Jurisprudence 3d 74:

{¶70} "'Money voluntarily paid on a claim of right with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party, at the time of payment, was ignorant of, or mistook, the law as to his liability. . .'

{¶71} "'Also, a payment made by reason of erroneous construction of the terms of a contract or one made by reason of a mistake as to the legal sufficiency of the title conveyed by the payee is not made under a mistake of fact but under a mistake of law, and if voluntarily made cannot be recovered back.'  73 Ohio Jurisprudence 3d (1986) 74.

{¶72} "The Supreme Court followed this principle in a series of cases which have reiterated that money paid under a mistake of law may not be recovered. The Court stated in its syllabus as follows in *Cincinnati v. Gas Light and Coke Co.,* (1895) 53 Ohio St. 278, 41 N.E. 239:

{¶73} "'A payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if

18

voluntarily made cannot be recovered back.' *Cincinnati v. Gas Light and Coke Co.,* (1985) 53 Ohio St. 278, 279, 41 N.E. 239.

**{¶74}** "The Court more recently stated:

**{¶75}** "'In the absence of fraud, duress, compulsion or mistake of fact, money voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay.' *State ex rel. Dickman v. Defenbacher,* (1949) 151 Ohio St. 391, 392, 86 N.E.2d 5."

**{¶76}** "* * *

**{¶77}** "*Absent evidence to show a mistake of fact, we cannot infer the parties have erred.*" (Emphasis added.) *Consolidated Mgmt. v. Handee Marts*, 109 Ohio App.3d 185, 189-190, 671 N.E.2d 1304 (8th Dist.1996).

**{¶78}** Evenflo also claims to be entitled to repayment based on the doctrine of unjust enrichment, which requires: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the 'unjust enrichment' element)." *L & H Leasing Co. v. Dutton*, 82 Ohio App.3d 528, 534, 612 N.E.2d 787 (3rd Dist.1992); *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

**{¶79}** Evenflo insists that it erroneously overpaid Meeker on four different bases. First, it claims that it overpaid Meeker by $133,956 based on its employees' failure to deduct the amount of product returns. Second, Evenflo claims that it overpaid Meeker by $84,721 as a result of its accounting employees' failure to deduct trade discounts that it extended to certain retailers. Third, Evenflo alleges to have overpaid Meeker by

19

$56,144 resulting from its employees' error in calculating Meeker's royalty based on its Canadian affiliate's sales to Canadian's retailers, instead of based on the sales by Evenflo directly to its Canadian affiliate.

**{¶80}** Finally, Evenflo also claims to have overpaid Meeker royalties on the Johnny Jump Up for approximately one and a half years beyond the product's patent expiration because its accounting department simply failed to stop making the payments upon the patent's expiration. Evenflo asserts that these overpayments resulted from its accounting department's mistakes. The trial court disagreed.

**{¶81}** The parties' 1991 and 1994 License Agreements govern Evenflo's counterclaim, which provide that Meeker is entitled to a percentage of the "Net Sales Price." The agreements define "Net Sales Price" as "the price charged for Licensed Articles sold by Evenflo * * * and not returned as defective, less such quantity trade and cash discounts, allowances for freight, and taxes as are specified on the invoices of Evenflo or its subsidiaries."

**{¶82}** Meeker correctly argues that a plain reading of the parties' agreements establish that in order to reduce the amounts for discounts, freight, and taxes, these amounts must be reflected on the Evenflo invoices. Thus, its claim for $84,721 for trade discounts lacks merit on this basis.

**{¶83}** Anthony Bruzzese, a certified public accountant and attorney, testified on behalf of Evenlfo. Bruzzese was hired by Evenflo in 2011 as its associate general counsel. He testified that Meeker's lawsuit against Evenflo prompted him to look at the payment history to Meeker under their agreements. As a result of his "review," he identified the alleged errors by Evenflo that form the basis for its counterclaim. He described the foregoing "mistakes" as caused by "the person in the finance group that

20

was responsible for calculating these, in essence, passed down this error from person to person to person over many years." Meeker repeatedly objected to this line of testimony based on Bruzzese's lack of foundation. Bruzzese believed that Evenflo's accounting employees had been paying Meeker's royalty percentage based on gross sales, not on net sales as the agreements specify.

{¶84} Bruzzese testified as to the amounts of the returned products and trade discounts that should have been deducted from Evenflo's royalty payments to Meeker, but were not. However, Bruzzese acquired his numbers from gross sales reports, not the retailers' invoices as specified in the parties' agreements. Evenflo did not produce the product invoices in discovery or at trial. Thus, consistent with the terms of the parties' agreements, Evenflo was unable to prove that it overpaid based on any discounts, freight, and taxes, because discounted amounts had to be reflected on the Evenflo invoices per the agreements.

{¶85} Additionally, although Bruzzese opined as to the reasons underlying Evenflo's overpayments, he did not know who originally calculated Meeker's royalty payments that resulted in the original alleged overpayment that was subsequently perpetuated by subsequent Evenflo accounting employees. In fact, Evenflo failed to present any testimony evidencing the reasons for the alleged overpayments and alleged miscalculations resulting in the same.

{¶86} Bruzzese testified that he believed one Evenflo employee started the Meeker royalty reports and that her procedure for generating those reports was passed down to two subsequent employees. He testified, "I don't know [if] the accounting folks reviewed the contract. * * * But I don't think they knew what it required or provided for." Bruzzese conceded on cross-examination that he does not know who the person was in

the 1990's that was employed by Evenflo who was in charge of making the Meeker royalty determinations or whether they reviewed the agreements. He stated "there was an error made in calculating that [Meeker] royalty at that time. I don't know the circumstances around it * * *." He went on to state that the prior Evenflo accounting employees either misunderstood the Meeker royalty provisions or just did not read it.

{¶87} Bruzzese also opined that the Evenflo employees likewise did not read the agreement with regard to the alleged Canadian overpayments to Meeker and that it was overpaid based on a mistake of fact.

{¶88} Laura Pederson testified that she was a financial analyst for Evenflo from 2008 to the present. She was trained by her predecessor, Matt Dolson. She generated Meeker's royalty payments based on the ExerSaucers that Dolson told her to include, but she did not know why one type of ExerSaucer was included and another was not included in the Meeker royalty calculations. In early 2011, she was told to stop paying all royalties to Meeker for ExerSaucers sales.

{¶89} Further, Evenflo's references to and reliance on Dolson's testimony are improper since his deposition testimony was excluded at the trial.

{¶90} Based on the foregoing limited evidence, we agree that Evenflo failed to establish the basis for all of its alleged overpayments to Meeker. Evenflo did not come forward with evidence demonstrating the actual basis for its calculations and alleged overpayments to Meeker. Thus, we are unable to assess whether the "mistakes" were one of law or fact. For these same reasons, Evenflo also failed to meet its burden of proof on its unjust enrichment claim since it did not establish that it conferred a benefit on Meeker that was not due, and failed to prove that Meeker had knowledge of this alleged benefit that it was not owed.

**{¶91}** As for Evenflo's claimed overpayment on the Johnny Jump Up, this claim fails for the same reasons. The parties agree that this product was first manufactured in 1993 and was a result of Meeker's consulting agreement with Evenflo. However, Evenflo permitted the patent to expire before the 20-year term as a result of its failure to pay associated patent fees. Notwithstanding, Evenflo contends that it continued to pay Meeker royalties for one and a half years beyond the 17 years it was obligated to pay under the agreements. Bruzzese's conjecture as to how the errors in calculating Meeker's royalty payments occurred is insufficient to support Evenflo's counterclaim. Because Evenflo has not come forward with evidence demonstrating its alleged mistake of fact, it is not entitled to relief for alleged overpaid royalties. Thus, this assignment of error lacks merit in its entirety.

**{¶92}** Meeker asserts two cross assignments of error. Its first alleged error asserts:

**{¶93}** "Did the trial court err in concluding that the ExerSaucer Bounce & Learn was not covered by the ExerSaucer patent where its features were the same as those of the ExerSaucer Portable Fun and Triple Fun?"

**{¶94}** "[T]he appropriate standard of review in contract cases is whether the trial court erred as a matter of law. * * * Accordingly, we 'must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law.' *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 1996 Ohio 158, 660 N.E.2d 431. In so doing, we must keep in mind that 'an appellate court gives due deference to the trial court's findings of fact, so long as they are supported by competent, credible evidence.'" (Citations omitted.) *Fine v. U.S. Erie Islands Co.*, 6th Dist. Ottawa No. OT-07-048, 2009-Ohio-1531, ¶25.

**{¶95}** As set forth previously, to establish breach of contract, Meeker first needed to establish that the product in question arose as a result of Meeker's consultation with Evenflo and for a patented product, that it was also "covered by" a Meeker patent. Both parties agreed that this "covered by" determination essentially required the trial court to engage in a patent infringement analysis.

**{¶96}** However, as Evenflo points out, Meeker's expert, Weber, was prohibited from providing his opinion on whether the ExerSaucer Bounce & Learn was "covered by" the '246 patent. The trial court excluded Weber's testimony on this issue alone because it was not included in his expert report in accordance with the trial court's deadline. Although Weber was permitted to analyze the '246 patent and give his opinion that the ExerSaucer Triple Fun and the ExerSaucer Portable Fun were "covered by" this patent, he was precluded from giving testimony on the ExerSaucer Bounce & Learn.

**{¶97}** Contrary to Meeker's claims, Evenflo's expert's testimony does not establish that the ExerSaucer Bounce & Learn was "covered by" the '246 patent. He testified to the contrary. Accordingly, there was no evidence before the court reflecting that the ExerSaucer Bounce & Learn was covered by the applicable patent, and as such, Meeker's first cross-assignment of error lacks merit.

**{¶98}** Meeker's second cross-assignment of error asserts: "The trial court erred in holding that Meeker was not entitled to royalties on the Johnny Jump Up for the full twenty-year period of its patent." Meeker claims that Evenflo had a contractual obligation to maintain the applicable Johnny Jump Up patent, which would result in its continued receipt of royalties for the 20-year life of the patent.

**{¶99}** The parties' agreement provides under Section 3.1 of the License Agreement that "[r]oyalties shall be payable on Licensed Articles *until the respective patent expires (for patented products),* or until the expiration of seventeen (17) years from the date of first commercial sale (for unpatented products)." (Emphasis added.)

**{¶100}** The parties agree that Johnny Jump Up was a patented product that was first sold in 1993. Evenflo then unilaterally allowed the patent to lapse in 2003 based on its nonpayment of patent maintenance fees. It nonetheless continued to pay Meeker royalties for the Johnny Jump Up until 2011.

**{¶101}** Meeker now asserts that Evenflo had an obligation to notify it that the patent was expiring so that Meeker could have paid the patent maintenance fee and continued to receive its royalty benefits for the full 20-year period. Meeker also asserts that Evenflo had a duty to maintain the patent for its fullest possible term, and that this was a "condition precedent" to the parties' agreement.

**{¶102}** A plain reading of the governing contractual language does not support Meeker's arguments. There is simply no contractual obligation for Evenflo to maintain the applicable Meeker patents for their fullest possible lifespan. The agreement likewise does not require Evenflo to notify Meeker if an applicable patent is expiring. Further, a plain reading of Section 3.1 does not support the trial court's conclusion that "royalties shall be paid on a licensed article until a respective patent expires or until the expiration of 17 years." Although this may be what the parties intended, this is not what the clear language of the contract provides. Absent an ambiguity, we are not at liberty to rewrite the parties' contractual obligations based on conjecture. *Shifrin v. Forest City Ent., Inc.,* 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

25

**{¶103}** "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. * * * Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. * * * *When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.*" (Emphasis added.) (Citations omitted.) *Id.*

**{¶104}** The parties specifically agreed that their written agreement encompassed their entire agreement and that it supersedes the parties' agreements or understandings to the contrary. Accordingly, Evenflo had no duty to pay beyond the expiration of the applicable Johnny Jump Up patent.

**{¶105}** Evenflo's continued payment of royalties on this product beyond the applicable expiration date of the patent was in error. Again, however, as we found under Evenflo's fifth assigned error, there was insufficient evidence demonstrating whether this was a mistake of fact or one of law. Thus, Evenflo is not entitled to a return of its royalty overpayments on the Johnny Jump Up.

**{¶106}** Finally, a condition precedent is something that must occur *before* a contractual obligation becomes effective, and when a condition precedent is not satisfied, the parties to a contract are not obligated to the terms of the agreement. *Campbell v. George J. Igel & Co.*, 2013-Ohio-3584, 3 N.E.3d 219, ¶13 (4th Dist.) Thus, contrary to Meeker's contentions, there was no condition precedent in the parties' agreement obligating Evenflo to maintain the patents for a full 20-year term. Based on the foregoing, Meeker's second cross-assignment of error lacks merit in its entirety.

{¶107} Accordingly, the judgment of the Portage County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.,

concur.